[Crim. No. 20673. Jan. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE HECTOR CHAVEZ, Defendant and Appellant.

COUNSEL

Quin Denvir and Paul Halvonik, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Tracy S. Rich and Aurelio Munoz, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Owen Lee Kwong, Mark Alan Hart, Robert F. Katz and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TOBRINER, J.**—On June 23, 1977, defendant Jose Hector Chavez was convicted of three counts of assault by means of force likely to produce great bodily injury and was found to have used a firearm as to each count. (Pen. Code, §§ 245, subd. (a); 12022.5.) On this appeal, he challenges his conviction on a number of grounds, contending, inter alia, (1) that the trial court erred in summarily rejecting his request that he be represented by the same appointed counsel who had represented him at his preliminary hearing in municipal court and (2) that the admission of a number of witnesses' prior inconsistent statements violated his con-

stitutional right to confront witnesses secured by article I, section 15 of the California Constitution.

As we shall explain, we have concluded that with the exception of a modification of the sentence the judgment should be affirmed. First, although we find that the trial court did err in summarily refusing even to consider the retention of defendant's initial appointed counsel, nothing in the present record suggests that defendant was prejudiced in any way by the court's error. Under these circumstances, we conclude that reversal of the conviction is not warranted.

Second, while we agree with defendant's contention that the right to confront witnesses guaranteed by the state Constitution embodies a safeguard independent of the protection secured by the federal Constitution, we conclude that the state constitutional confrontation clause is not violated by the admission of a prior statement of a witness who testifies at trial and is subject to full cross-examination by the defendant at that time.

1.  *The facts and proceedings below.*

The offense at issue here arose from the dark background of gang rivalry in the East Los Angeles section of Los Angeles County. On Saturday, November 20, 1976, approximately 30 members or associates of the Hazard gang congregated in a parking lot in the Ramona Gardens housing project, an area known to be "Hazard territory." Between 10 and 11 p.m., as a blue car—later identified as belonging to defendant Chavez—drove past the parking lot, the occupants of the car shouted "LA Clovers," the name of a rival gang of the Hazards; the crowd in the parking lot responded by yelling "Hazard." Several minutes later the blue car returned, and as it passed the parking lot several rifle shots were fired from the car. The crowd in the parking lot scrambled for cover and no one was injured by the gun fire.

Two police officers, Arthur Morales and William Jiminez, patrolling the area, heard the gunshots and drove to the parking lot; when they arrived they heard additional shots from a fleeing vehicle. As the officers pursued the vehicle in their patrol car, additional rifle shots were fired from the car in their direction.

Eventually the chase came to a halt when the blue car crashed into a telephone pole. As the officers approached the car, Officer Morales saw

a rifle pointing out the window at him and his partner. He shouted "Gun!" and Officer Jiminez fired two shotgun blasts at the vehicle. One of the occupants of the blue car then shouted, "I'm hit, I'm hit. We're coming out." A .22 caliber rifle was thrown from the car and five young men, including defendant, then left the vehicle, and at the officers' direction, lay prone on the ground. Officer Morales testified that immediately thereafter "I glanced over at my partner to see if he was all right, and at that time I had looked back at the defendant and at that time he was making a reach for the weapon with his right hand. . . . I yelled 'Freeze or you're dead.' The defendant complied with my demands and returned his hand back to the original position." A search of the blue car revealed a box of .22 caliber ammunition and some spent .22 caliber shells.

Defendant and the four other occupants of the car were arrested and taken into custody. Thereafter, a complaint was filed against defendant, charging him with three counts of aggravated assault and alleging that he had used a firearm in the commission of each of the assaults.

On January 26, 1977, defendant, represented by the public defender, appeared in municipal court and entered a plea of not guilty to the charges against him. On February 9, 1977, the court granted the public defender's motion to be relieved as counsel of record for defendant because of a conflict of interest, and appointed Joe Ingber to represent defendant. Ingber did represent defendant eight days later at defendant's preliminary examination in the municipal court.[1] During that hearing, which lasted one hour, the People presented two witnesses, whom Attorney Ingber briefly cross-examined. At the close of the hearing, the court ordered defendant held to answer the charges and set defendant's arraignment in superior court for March 4, 1977.

When defendant appeared for arraignment before the superior court judge at noon on March 4, the following exchange occurred:

"THE COURT: People versus Jose Hector Chavez, Case No. 1 on calendar. Defendant is present with Deputy Public Defender Carol Hawes.

---

[1]Pursuant to defendant's request, we take judicial notice of the Los Angeles Municipal Court file in case No. A 332520. (Evid. Code, § 452, subd. (d).) Docket sheets indicate that Ingber was appointed and represented defendant at the preliminary hearing.

"I understand the Public Defender is going to declare a conflict in this case.

"MRS. HAWES: Yes, Your Honor.

"THE COURT: All right. That being the case, then *the Court has called private counsel.* He will be here at 1:30.

"Mr. Chavez, we will have you brought out at that time.

"THE DEFENDANT: *May I say something? I talked to the lawyer that represented me in the Municipal Court and he said that he'd be willing to take my case and for me to ask you.*

"THE COURT: *Well, we don't do that, Mr. Chavez. We appoint our own counsel at the Superior Court level.*" (Italics added.)

Later that afternoon the court appointed Attorney Michael Cowell to represent defendant. Cowell accepted the appointment, and appeared for defendant without further incident at pretrial proceedings two months later and at trial beginning on May 12, 1977. Neither defendant nor Cowell suggested at any time that their relationship was unsatisfactory, or that the defense had been hampered in any way by the trial court's failure to appoint Ingber to represent defendant in superior court.

At the trial, Officers Morales and Jiminez testified to their observations of the events on the night of the crime which led to the crash of defendant's car and to defendant's arrest. Although the officers both testified that numerous rifle shots had been fired at their patrol car from the fleeing auto during the chase, neither officer could identify which occupant of the car had actually fired the shots.

A number of eyewitnesses—called by both the prosecution and the defense—confirmed the fact that several shots had been fired from defendant's vehicle as it drove past the Ramona Gardens parking lot on the night in question. In support of the allegation that defendant had personally fired the rifle, however, the prosecution relied upon a number of statements made prior to the trial by a single witness, Gregory Angel, a member of the Hazard gang who had been in the parking lot at the time of the shooting. As we shall see, it is the admission of these

prior statements by Angel that form the crux of defendant's contention that he was denied his constitutional confrontation right.[2]

At trial, Angel testified that he had been in the parking lot on the night in question, that he had heard the "Clover" - "Hazard" exchange between the occupants of the blue car and the people in the parking lot and that he had seen several shots fired from the blue car as it passed by the parking lot a second time. When asked at trial if he had seen who fired the shots, Angel answered "No."

The prosecutor then asked Angel about a number of statements Angel had made on prior occasions. Angel acknowledged that on November 22, two days after the shooting, when a police officer investigating the crime came to his home, he had told the officer that he had seen the person in the right front passenger seat of the blue car lean out of the car and fire several shots in the direction of the Hazards. Although the written police report of the November 22 interview indicated that Angel had identified defendant—whom Angel allegedly referred to by his street name "Bird"—as the person who fired the shots, and although the police officer who had conducted the interview thereafter testified at trial that Angel had indeed identified defendant at that time, at trial Angel denied having so identified the defendant. Angel admitted, however, that he had told the officer at that time that "I am not going to court. No one got hurt; so there is no reason to go."

In further testimony on direct examination, Angel conceded that on January 3, 1977, several weeks after the initial police interview, he was

---

[2]Prior statements of two other witnesses were introduced by the prosecution, but those statements clearly did not affect the verdict in this case. Augustine Mendoza and Raul Lozano, two of the passengers of the blue car who were arrested with defendant on the night of the shooting, were called as prosecution witnesses. When Mendoza refused to testify on Fifth Amendment grounds, the prosecutor introduced, without objection, evidence that Mendoza had previously told police that he and the other occupants of the car were just "cruising around" on the night of the shooting. Lozano did not invoke his privilege against self-incrimination but denied hearing any shots on the night in question; the prosecution then introduced evidence that Lozano had previously told the police that he had heard shots and that they had come from inside the car.

Given (1) the numerous additional eyewitnesses who testified as to the shots from the blue car, and (2) the immediate arrest of defendant as he left the car after the police pursuit, the out-of-court statements of Mendoza and Lozano did not materially affect the verdict in this case. Moreover, as we explain below, defendant's failure to object to the introduction of the prior statements precludes him from presently challenging the admission of Mendoza's statement (see fn. 5, post) and the admission of Lozano's statement did not violate the defendant's confrontation rights. (See pp. 349-361, post.)

interviewed by another investigating officer about the events of the night of the shooting and that on this latter occasion he had signed a written statement setting forth his observations of the night in question in some detail. The statement indicates that Angel saw "Bird driving [the blue car] the first time they went by," that, on the subsequent pass, Bird had moved to the right front passenger seat, and that "at this time—he had a rifle. He pointed it out the window and fired once. I ducked." Although at trial Angel confirmed the accuracy of much of the statement he denied that he had specifically named defendant during the police interview.

Finally, the prosecution introduced evidence that when Angel was questioned by the municipal court judge at the preliminary hearing in this case, he had affirmatively, though reluctantly, stated that he had seen defendant fire the shots from the blue car on the night in question. In this connection, the prosecutor read the following exchange between the municipal court judge and Angel into the record: "[Judge]: According to this statement that you signed here, you stated that Bird was in the right front seat; that he had a rifle; that he pointed it out the window and fired once and 'I ducked.' Is that the truth or is it a lie? [Witness]: See, he did not shoot at anybody. He was shooting at the crowd....[Judge]: It doesn't say he shot at anyone. It said 'fired once.' It just says 'I ducked.' It doesn't say he shot at you. Did you see the defendant fire a gun at the crowd? [Witness]: Yes."

Although Angel was never directly asked why his testimony at trial differed from his earlier statements and preliminary hearing testimony, Angel did admit that a few days before trial he had told the prosecutor that he did not want to testify and that he'd "rather take care of this out on the street."

Defense counsel was given full opportunity to cross-examine Angel at trial before the jury, both as to his trial testimony and as to all of his alleged prior statements that had been brought out on direct examination. Under defense counsel's questioning, Angel conceded that he had given contradictory statements under oath as to a number of matters, stating both that he had and had not known defendant prior to the shooting and that he had and had not seen defendant fire the shots on the night in question. Defense counsel did not, however, ask Angel to explain the reason for the inconsistencies between his trial testimony and his prior statements.

The defense called a number of eyewitnesses who disputed the identification of defendant as the person who fired the shots. Thomas Lucero and Frank Trajo, both members of the Hazard gang who were present at the scene of the shooting, testified that they knew defendant, that they had seen the person who had shot from the car and that defendant was not the person they had seen; neither witness, however, identified the person who had done the shooting.

After hearing the testimony, the jury returned a verdict finding defendant guilty of the charged assaults and also finding that defendant had used a gun in the offenses. As already noted, on this appeal defendant raises two principal claims: (1) that the trial court erred in summarily refusing to continue the appointment of the attorney who had represented him at his preliminary hearing in municipal court; and (2) that the admission of the prior inconsistent statements violated his right to confront witnesses under the state Constitution. We address each of those contentions in turn, and then discuss a number of additional arguments advanced by the defendant.

2. *Although the superior court erred in applying a routine policy of appointing new counsel for indigent defendants at the superior court level without considering the relevant facts of the individual case, reversal of the conviction is not warranted in the absence of any indication in the record that the error prejudiced the defendant.*

Article I, section 15 of the California Constitution guarantees a criminal defendant's right "to have the assistance of counsel for the defendant's defense." (See also U.S. Const., 6th Amend.) The unquestioned right of indigent defendants to the effective assistance of counsel (see, e.g., *Gideon v. Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) is satisfied in California by the statutory provision for the assignment of counsel by the court. As section 987, subdivision (a) mandates, "In a noncapital case, if the defendant appears for arraignment without counsel, he shall be informed by the court that it is his right to have counsel before being arraigned, and shall be asked if he desires the assistance of counsel. If he desires and is unable to employ counsel the court shall assign counsel to defend him."

While the public defender frequently bears the principal burden of defending persons charged with crime who are financially unable to employ counsel (Gov. Code, § 27700 et seq.), section 987.2, subdivision (a)

provides for the compensation of other assigned counsel "in a case in which the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused.  . . . "

In *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984], we analyzed this statutory scheme and concluded that the appointment of counsel under the pertinent statutes rests within the sound discretion of the trial court and that an abuse of discretion is not demonstrated by simply showing that the trial court failed to appoint a particular counsel whom the defendant had requested and who was willing to undertake the appointment. (8 Cal.3d at pp. 933-934. Cf. *People* v. *Holland* (1978) 23 Cal.3d 77, 86-89 [151 Cal.Rptr. 625, 588 P.2d 765] (retained counsel); *People* v. *Crovedi* (1966) 65 Cal.2d 199, 207-208 [53 Cal.Rptr. 284, 417 P.2d 868] (same); *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 559-562 [68 Cal.Rptr. 1, 440 P.2d 65] (removal of counsel).)

Although one passage in *Drumgo* intimated in dictum that an abuse of discretion in the appointment of counsel could never be established "when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense" (fn. omitted) (8 Cal.3d at p. 935), we subsequently reconsidered that language in *Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 797 [140 Cal.Rptr. 318, 567 P.2d 750], and explained that in this context, as in other contexts, the boundaries of "judicial discretion" cannot be embraced by an "absolute rule" but must be judged by the circumstances of the particular case.

As we noted in *Harris,* in *Drumgo* the sole basis upon which defendant urged the appointment of a particular attorney, Richard A. Hodge, to represent him at trial rather than the attorney selected by the court, was the defendant's trust and confidence in Hodge and his "lack of knowledge" of the appointed attorney. No other facts were advanced; there was no showing that Hodge had previously represented defendant in the underlying or in any other proceeding, nor any suggestion that disagreement had arisen between the defendant and the appointed attorney as to trial tactics. Under those circumstances, the *Drumgo* decision held that defendant had failed to demonstrate an abuse of discretion in the appointment of a competent and disinterested attorney.

In *Harris*, by contrast, we concluded that the trial court had abused its discretion in declining to appoint counsel requested by the defendants in that case. In reaching this conclusion, we pointed to several factors which the court had improperly disregarded in refusing to appoint Attorneys Leonard I. Weinglass and Susan B. Jordan, the attorneys who had represented defendants in related proceedings in municipal court.

We noted that the defendants in *Harris* had thoroughly documented the fact that the familiarity of their former counsel with the issues and witnesses involved in defendants' alleged activities as members of the so-called Symbionese Liberation Army would greatly facilitate their preparation for the superior court case. Defendants had also shown that the appointment of Attorneys Weinglass and Jordan would afford them a "continuity of representation" similar to that enjoyed by the specially appointed team of prosecutors in the case. Moreover, "the effort required by [new appointed counsel] to achieve a level of familiarity with the case comparable to that of Attorneys Jordan and Weinglass would entail considerable duplicative time and expense to the county—all of which could be avoided by the appointment of Attorneys Jordan and Weinglass pursuant to [defendants'] request." (19 Cal.3d 786, 793.) In sum, because defendants' "statement of preference, timely made, [wa]s supported by objective considerations of [such] consequence" (*id.*, at p. 799), we held that the trial court had abused its discretion in denying defendants' request.

In light of our decision in *Harris*, it is clear that the superior court in the present matter improperly adhered to a fixed policy of appointing its "own" counsel in every case. The exercise of the court's discretion in the appointment of counsel should not have been restricted by an inflexible rule, but rather should have rested upon consideration of the particular facts and interests involved in the case before it. By refusing to give defendant Chavez an opportunity to explain why he preferred that his former counsel represent him at trial, the court effectively foreclosed consideration of any arguments which defendant may have marshalled in support of continuing Attorney Ingber's appointment.

In a closely analogous situation we have held that a refusal by the trial court to afford a defendant an opportunity to set forth the reasons underlying his request for the substitution of appointed counsel constitutes an abuse of discretion by the court. In *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], defendant contended

that he was deprived of his constitutional right to the effective assistance of counsel because the trial court denied his motion to substitute new counsel without giving him an opportunity to state the reasons for his request. At trial defendant had described to the court his feeling that he was not "'being competently or adequately represented'" by his appointed counsel. (*Id.*, at p. 120.) He subsequently repeated his complaint to the court and indeed offered to "'bring up some specific instances.'" (*Id.*, at p. 122.) The court denied defendant's motion without further inquiry.

On appeal from defendant's conviction, we agreed with defendant that a trial court abuses its discretion in ruling upon a motion for substitution without first hearing the defendant's reasons for requesting a change of counsel. "A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom . . . . A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' [Citation.]" (*Id.*, at pp. 123-124.)

The reasoning of *Marsden* fully applies to the instant case. After the public defender declared a conflict of interest in defendant's cause, the trial court announced that it had called private counsel. Defendant immediately informed the court that his prior counsel was both willing and able to resume representation. Although the trial court was not necessarily constrained to appoint defendant's former counsel merely because defendant so requested, the court should have given defendant an opportunity to explain the reasons for his preference.[3]

Thus we conclude that the trial court abused its discretion in denying the request for the continued appointment of counsel without affording

---

[3]Indeed, affording a defendant an opportunity to explain his preference for the continued representation of a particular counsel serves not only to inform the court of the relevant facts of an individual case, but also "represents a valued human interaction in which the affected person experiences at least the satisfaction of participating in the decision that vitally concerns [him], and perhaps the separate satisfaction of receiving an explanation of why the decision is being made in a certain way . . . . At stake here is not just the much-acclaimed *appearance* of justice but, from a perspective that treats process as intrinsically significant, the very *essence* of justice." (Original italics.) (Tribe, American Constitutional Law (1978) p. 503; see *People* v. *Ramirez* (1979) 25 Cal.3d 260, 267-268 [158 Cal.Rptr. 316, 599 P.2d 622].)

defendant an opportunity to explain what circumstances, if any, might warrant such continued appointment.

Having decided that the court abused its discretion in this regard, we must determine whether that error warrants reversal of defendant's conviction. For a number of reasons we have concluded that, on the present record, the error was not prejudicial.

As we have explained, our decision in *Harris* v. *Superior Court, supra*, that the trial court erred in refusing to appoint defendants' counsel of choice rested upon several factors of significant weight. The present case reflects none of those same considerations. Thus, for example, nothing in the record before us demonstrates that the relationship between defendant and Attorney Ingber ever approached the "extended relationship" enjoyed between defendants Harris and Attorneys Weinglass and Jordan. While that lack of showing may in part be attributable to the trial court's summary dismissal of defendant's request, neither defendant nor either of his counsel ever suggested during pretrial proceedings, at trial, or in the course of the posttrial sentencing hearing, that the defense was hampered in any way by the failure to reappoint initial counsel.[4] Defendant has likewise never urged that Attorney Cowell was anything but fully competent, or that counsel was given inadequate opportunity to prepare the defense: from all indications, defendant was fully satisfied with his representation. In short, nothing in the present record suggests that defendant suffered any prejudice whatsoever as a result of the trial court's error.

Defendant maintains, however, that a "per se" rule of reversible error should be applied in this case, arguing that such a rule was adopted by this court in *Marsden* and its progeny. (*People* v. *Lewis* (1978) 20 Cal.3d 496 [143 Cal.Rptr. 138, 573 P.2d 40]; *People* v. *Hidalgo* (1978) 22 Cal.3d 826 [150 Cal.Rptr. 788, 587 P.2d 230].) Defendant is in error in suggesting that *Marsden* enunciated a per se reversible error test;

---

[4]In *Harris*, both sets of defense attorneys filed declarations or briefs and argued vigorously in support of defendants' motion for appointment of Weinglass and Jordan as counsel. (See 19 Cal.3d 786, 792-794, 797-798, & fns. 10, 11.) Moreover, upon the denial of the request in superior court, defense counsel promptly challenged the court's ruling through pretrial writ proceedings.

In this case, by contrast, although Ingber's appointment as defense counsel was apparently still in effect up until the time of defendant's arraignment (see Pen. Code, § 987.1), Ingber did not personally appear in court with defendant to request a continuation of his appointment, and neither counsel sought pretrial review of the superior court's action.

the decision makes clear that the court reversed the conviction in that case because the court concluded that it could not find beyond a reasonable doubt that the error did not contribute to the defendant's conviction. (See 2 Cal.3d at p. 126.)

Moreover, we think it is clear that *Marsden* and its progeny are in this respect clearly distinguishable from the situation before us. In *Marsden*, as we have seen, defendant insisted at trial that he had lost all confidence in his court-appointed counsel, and even offered to particularize counsel's inadequacies. The trial court nonetheless refused to give defendant an opportunity to show why defendant felt his present counsel was inadequate, and required instead that defendant continue to trial with the very counsel in whom defendant had lost all confidence. On those facts we concluded that reversal was necessary, bearing in mind that defendant's continuing relationship with his counsel had been seriously impaired and that it was impossible to determine whether the defense had suffered as a consequence.

By contrast, in the instant case there is no showing that defendant questioned the ability or desire of his new appointed counsel fully to represent his best interests. We find no evidence of disagreement or lack of rapport between defendant and counsel, nor is there any hint that the defense was hindered by the break in representation occasioned by Attorney Cowell's appointment. Under these circumstances, we conclude that the trial court's error does not warrant reversal of defendant's conviction.

3. *Defendant's right to confront witnesses under article I, section 15 of the California Constitution was not denied by the admission and substantive use of out-of-court statements of a witness who testified at trial and was subject at that time to full cross-examination as to the prior statements.*

Defendant additionally contends that his conviction should be reversed on the grounds that the admission into evidence of Gregory Angel's pretrial statements identifying him as the person who fired the gun on the night of the shooting violated his right to confront the witnesses against him, as secured by article I, section 15 of the California Constitution. Although defendant concedes that the admission of such statements did not violate his rights under the *federal* constitutional confrontation clause, as interpreted in the United States Supreme

Court decision in *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], he urges this court to interpret the *state* constitutional confrontation provision to preclude the use of such prior statements as substantive evidence against him.[5]

A similar claim was recently urged before this court in the case of *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196]. In that case, a majority of the court determined that we were not required to reach the question of the proper interpretation of the state confrontation clause. We held that in any event the evidence relied upon by the prosecution did not suffice as a matter of law to support the defendant's conviction. A concurring opinion in *Johnny G.*, however, did address the confrontation issue pursued here, and defendant in this case in effect urges the court as a whole to adopt the conclusions of the concurring opinion in *Johnny G.*

The People, relying upon a number of recent Court of Appeal decisions (*People* v. *Bertoldo, supra*, 77 Cal.App.3d 627, 631-632; *People* v. *Contreras, supra*, 57 Cal.App.3d 816, 820), contend initially that the "legislative history" of article I, section 15, added to the state Constitution in 1974, demonstrates that the state confrontation clause was

---

[5]Although defendant did not object to the introduction of Angel's prior statements on this ground at trial, we agree with defendant's contention that under this court's decision in *People* v. *Williams* (1976) 16 Cal.3d 663, 667, footnote 4 [128 Cal.Rptr. 888, 547 P.2d 1000], that failure does not bar him from raising this claim on appeal. In *Williams*, we pointed out that although in general "questions relating to the admissibility of evidence will not be reviewed on appeal absent a specific and timely objection at trial on the ground sought to be urged on appeal . . . 'we have excused a failure to object where to require defense counsel to raise an objection "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal."'" (*Id.*) (Quoting *People* v. *De Santiago* (1969) 71 Cal.2d 18, 22-23 [76 Cal.Rptr. 809, 453 P.2d 353].) In the present case, any objection at trial on the grounds urged before this court would clearly have been futile, in light of a number of prior Court of Appeal decisions upholding the admissibility of such prior inconsistent statements in the face of similar state constitutional challenges. (See *People* v. *Contreras* (1976) 57 Cal.App.3d 816, 819-820 [129 Cal.Rptr. 397]; *People* v. *Browning* (1975) 45 Cal.App.3d 125, 142-143 [119 Cal.Rptr. 420]. See also *People* v. *Bertoldo* (1978) 77 Cal.App.3d 627, 631-632 [143 Cal.Rptr. 675].)

The *Williams* rationale, however, does not excuse defendant's failure to object to the introduction of the prior statements of Augustine Mendoza, after Mendoza had refused to answer potentially incriminating questions on Fifth Amendment grounds. Under existing authority, defendant had no basis for concluding that an objection to the admission of Mendoza's prior statements would have been futile. (See *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074].) As already noted, however, it appears that the admission of Mendoza's statements was in any event harmless beyond a reasonable doubt. (See fn. 2, *ante.*)

intended to be coextensive with the federal confrontation clause. The People accordingly maintain that in interpreting the state guarantee our court is bound by the presently controlling federal decisions interpreting the federal confrontation clause, and thus that defendant's claim must necessarily fail under the dictates of *California* v. *Green.*

On this point, we agree with the concurring opinion in *Johnny G.* that the People's position is untenable. (See also *People* v. *Morgan* (1978) 87 Cal.App.3d 59, 74 [150 Cal.Rptr. 712].) We recognize, of course, that the draftsmen of the 1974 revision of article I, section 15 were aware that the federal Constitution guaranteed a criminal defendant a right to confront the witnesses against him, and that the inclusion of a specific confrontation clause in article I, section 15 was designed to afford criminal defendants in California a parallel protection as a matter of state constitutional right.[6] Nothing in the draftmen's comments, however, suggests that they contemplated that state courts, in interpreting the state confrontation clause, would be invariably bound to adopt the same interpretation which federal courts may afford the federal confrontation guarantee. Indeed, as the concurring opinion in *Johnny G.* points out (25 Cal.3d at p. 558-559), the inclusion of article I, section 24—declaring that "[r]ights guaranteed by this Constitution are not dependent upon those guaranteed by the United States Constitution"—as part of the same 1974 constitutional revision which added the current explicit state confrontation guarantee, completely refutes any notion that the draftsmen of the provision intended judicial interpretation of the federal confrontation clause to control the interpretation of the separate, albeit parallel, state constitutional provision.

---

[6]In the course of drafting the constitutional revisions that were ultimately adopted by the voters in 1974, the California Constitution Revision Commission issued a number of reports concerning the proposed revisions. In February 1970, the article I committee of the Constitution Revision Commission published an initial explanation of the decision to add a specific confrontation clause as part of the newly proposed California Declaration of Rights. The committee's report noted that the then-existing article I "[s]ection 13 gives criminal defendants the valuable power of the court to compel the attendance of witnesses in his behalf. The Committee feels that this provision should be retained. It also recommends the adoption of a right to confront witnesses. Confrontation of witnesses is another Sixth Amendment right which is binding on the state. However, the Committee feels that such basic guarantees should flow from state law as well as federal law." (Report IV on Crim. Proc., p. 7.)

Later, in drafting the comments to the proposed constitutional revision, the commission as a whole gave a similar explanation: "Existing section 13 contains significant criminal procedure provisions...The Commission recommends that these guarantees be retained. In addition the Commission believes that the revised section should give the criminal defendant the right to be confronted with the witnesses against him. While

Furthermore, wholly apart from article I, section 24, California decisions have long recognized that "[s]tate courts in interpreting provisions of the state Constitution are not necessarily concluded by an interpretation placed on similar provisions in the federal Constitution." (*Gabrielli v. Knickerbocker* (1938) 12 Cal.2d 85, 89 [82 P.2d 391]. See, e.g., *Cardenas v. Superior Court* (1961) 56 Cal.2d 273, 275-276 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371]; *Dept. of Mental Hygiene v. Kirchner* (1965) 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361].) This conclusion, of course, simply reflects one of the principal tenets of our federal system of government: just as the United States Supreme Court bears the ultimate judicial responsibility for determining matters of federal law, this court bears the ultimate judicial responsibility for resolving questions of state law, including the proper interpretation of provisions of the state Constitution. (See generally Falk, *The State Constitution: A More Than "Adequate" Nonfederal Ground* (1973) 61 Cal.L.Rev. 273; Note, *State Bills of Rights* (1973) 8 Harv. Civ. Rights-Civ.Lib.L.Rev. 271, 285-286.) In fulfilling this difficult and grave responsibility, we cannot properly relegate our task to the judicial guardians of the federal Constitution, but instead must recognize our personal obligation to exercise independent legal judgment in ascertaining the meaning and application of state constitutional provisions.

Accordingly, defendant's state constitutional confrontation claim cannot be resolved by a mechanical invocation of current federal precedent. Of course, our past decisions do clearly affirm that, while not controlling, the United States Supreme Court's interpretation of similar provisions of the federal Constitution, like our sister state courts' interpretations of similar state constitutional provisions, will provide valuable guidance in the interpretation of our state constitutional guarantees. (See, e.g., *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 469 [156 Cal.Rptr. 14, 595 P.2d 592]; *Gabrielli v. Knickerbocker, supra*, 12 Cal.2d 85, 89.) As we shall explain, in the present case we have concluded on the basis of both California precedent and the persuasive force of out-of-state authority that the California confrontation clause should not be interpreted to bar the admission and substantive use of a prior inconsistent statement of a

this is presently required by the Federal Constitution, it should be included in California's basic document." (Part 5, Proposed Revision of the Cal. Const., at p. 24.) (See also Ballot Pamp. Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1974) p. 26.)

witness who actually testifies at trial and is thereby subject to full cross-examination as to such prior statements.

Article I, section 15 of the California Constitution, the provision upon which the defendant relies, currently provides in relevant part: "The defendant in a criminal cause has the right to a speedy public trial, to compel attendance of witnesses in the defendant's behalf, to have the assistance of counsel for the defendant's defense, to be personally present with counsel, *and to be confronted with the witnesses against the defendant.* The Legislature may provide for the deposition of a witness in the presence of the defendant and the defendant's counsel." (Italics added.)

At the outset, we point out that the defendant in this case was accorded the full literal protection prescribed by the provision at issue. Gregory Angel, the "witness against the defendant," testified at trial, and at that time defendant enjoyed the right to "confront" the witness and to cross-examine him fully as to all of his statements which were submitted to the trier of fact. Accordingly, we are not called upon to determine whether, despite a denial of "confrontation" at trial, the origin, historical development and purposes of the right to confrontation suggest that we should impose an exception to the literal commands of the provision. Instead, we address a claim that even though a defendant has confronted and been afforded the opportunity to cross-examine the witnesses against him at trial, the state confrontation clause should be interpreted to bar the introduction—or at least the substantive use—of any prior statement of an appearing witness not spoken from the witness stand.

In support of this argument, defendant relies on two decisions of this court decided a decade ago, *People v. Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111] and *People v. Green* (1969) 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422]. In *Johnson* and *Green*, the defendants challenged the constitutionality of a newly enacted provision of the Evidence Code, section 1235, which permitted the jury to consider a witness' prior inconsistent statements for all purposes and not simply to impeach the witness' testimony.[7] Defendants contended that the admission and substantive use of such out-of-court statements violated their right to confront witnesses under a series of then-recent United States

---

[7]Section 1235 provides in full: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Supreme Court decisions, *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065], *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074], *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318] and *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620].

Although none of the prior Supreme Court decisions involved a situation like *Johnson* and *Green* in which the declarant, whose statement was introduced against the defendant, actually had been called as a witness and had been available for full cross-examination at trial, our court in *Johnson* and *Green* rendered its own interpretation of the federal decisions. We held that they precluded, as a matter of federal confrontation law, a state from permitting a trier of fact to consider any statement of an available witness which was made at a time when it was not subject to *contemporary* cross-examination before the ultimate trier of fact. On this basis, the *Johnson* and *Green* decisions held Evidence Code section 1235 unconstitutional.

The United States Supreme Court granted certiorari in *Green* and reversed, holding, inter alia, that the federal constitutional right to confront witnesses is not violated by the introduction of a prior out-of-court statement of a declarant who is called as a witness at trial and is subject to full cross-examination both as to his present testimony and as to any prior statements. (*California* v. *Green, supra*, 399 U.S. 149, 153-164 [26 L.Ed.2d 489, 494-501].)[8]

In explaining this conclusion, the *Green* court first briefly reviewed the historical origin of the confrontation clause. The court noted that "the particular vice that gave impetus to the confrontation claim was

---

[8]Even Justice Brennan, the sole dissenter in *Green*, did not challenge the majority's conclusion on this point. In finding a confrontation violation in *Green*, Justice Brennan relied on the fact that in the *Green* case itself the witness testified at trial that he had no memory of the crucial facts because he had been on drugs at the critical time. Justice Brennan concluded that under such circumstances the defendant had no opportunity to effectively cross-examine the witness at trial as to the crucial evidence.

Although, in light of the peculiar facts of *Green*, Justice Brennan did not think it necessary to resolve the broad question as to the constitutional validity of the general practice of admitting prior inconsistent statements of a witness who *is* effectively available for cross-examination at trial, Justice Brennan did state that "[i]f...the witness is willing and able to testify at trial about the operative events, the demands of the Confrontation Clause may be met, even though the witness contradicts his pretrial assertions." (399 U.S. at p. 192, fn. 5 [26 L.Ed.2d at p. 516].) In the instant case, of course, the witness was able to testify at trial about the "operative events" and was available for full cross-examination as to all of his varying statements about such events.

the practice of trying defendants on 'evidence' which consisted solely of *ex parte* affidavits or depositions secured by the examining magistrates, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact." (*Id.*, at p. 156 [26 L.Ed.2d at p. 496]. See also *Mattox* v. *United States* (1895) 156 U.S. 237, 242-243 [39 L.Ed. 409, 410-411, 15 S.Ct. 337]; *Howser* v. *Commonwealth* (1865) 51 Pa. 332, 338.) The court pointed out that the "objections occasioned by this practice appear primarily to have been aimed at the failure to call the witness to confront personally the defendant at his trial. So far as appears, in claiming confrontation rights no objection was made against receiving a witness' out-of-court deposition or statements, so long as the witness was present at trial to repeat his story and to explain or repudiate any conflicting prior stories before the trier of fact." (399 U.S. at p. 157 [26 L.Ed.2d at p. 496].)

After indicating that the defendant's proposed interpretation of the confrontation clause enjoyed no support in the history of the provision, the Supreme Court explained that none of its prior decisions had held that the confrontation clause required the exclusion of out-of-court statements of a witness who had testified and had been available for cross-examination at trial. On the contrary, the court noted that the concern of the great majority of its confrontation decisions had "been focused on precisely the opposite situation—situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial." (*Id.*, at p. 161 [26 L.Ed.2d at p. 499].) The court pointed out that in such situations, which frequently arise through application of traditional exceptions to the hearsay rule, the court had carefully scrutinized the challenged practice under the confrontation clause, since such hearsay exceptions "dispense[d] altogether with the literal right to 'confrontation' and cross-examination." (*Id.*, at p. 162 [26 L.Ed.2d at p. 499].) The court noted, however, that "[w]here the declarant is not absent, but is present to testify and to submit to cross-examination," its past cases "support the conclusion that the admission of his out-of-court statement does not create a confrontation problem." (*Id.* [26 L.Ed.2d at p. 499].)

Finally, in response to the defendant's argument that the opportunity to cross-examine the witness at trial about a prior inconsistent statement should not be considered constitutionally adequate cross-examination for purposes of the confrontation clause because it did not occur contemporaneously with the statement, the court observed that "[t]he most successful cross-examination at the time the prior statement

was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant." (*Id.*, at p. 159 [26 L.Ed.2d at p. 497].) While acknowledging that in cross-examining a witness about a prior inconsistent statement a defendant's task differs from the task he would have faced had he examined the witness before the witness changed his story, the court maintained that "[t]his difference,...far from lessening, may actually enhance the defendant's ability to attack the prior statement. For the witness, favorable to the defendant, should be more than willing to give the usual suggested explanation for the inaccuracy of his prior statement, such as faulty perception or undue haste in recounting the event. Under such circumstances, the defendant is not likely to be hampered in effectively attacking the prior statements, solely because his attack comes later in time." (*Id.*, at p. 160 [26 L.Ed.2d at p. 498].)

Accordingly, the *Green* court concluded that the federal confrontation clause was not violated by the introduction and use of a prior statement of a witness, when the witness testifies at trial and is subject to full cross-examination at that time.

On remand of the *Green* case, our court followed the Supreme Court's lead, rejecting the defendant's confrontation claim and affirming defendant's conviction. (*People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998].) Since the *Green* decision in 1970, our court has on a number of occasions rejected similar confrontation claims on the strength of the *Green* holding. (See *People* v. *Bynum* (1971) 4 Cal.3d 589, 602 [94 Cal.Rptr. 241, 483 P.2d 1193], overruled on other grounds in *People* v. *Williams, supra*, 16 Cal.3d 663, 669; *People* v. *Hathcock* (1973) 8 Cal.3d 599, 615-616 [105 Cal.Rptr. 540, 504 P.2d 476]; *People* v. *Williams* (1971) 9 Cal.3d 24, 38 [106 Cal.Rptr. 622, 506 P.2d 998]; *People* v. *Strickland* (1974) 11 Cal.3d 946, 954 [114 Cal.Rptr. 632, 523 P.2d 672]. See also *People* v. *Bolton* (1979) 23 Cal.3d 208, 215 fn. 4 [152 Cal.Rptr. 141, 589 P.2d 396].) As defendant points out, however, none of these post-*Green* decisions specifically addressed the issue in terms of the requirements of the state, as distinguished from the federal, Constitution. Defendant now urges our court to seize the opportunity to "reinstate"—admittedly somewhat belatedly—the broad holdings of the *Johnson* and *Green* decisions as a matter of state constitutional law. As we shall explain, for a number of reasons we reject defendant's argument.

To begin with, although defendant assumes that because *Johnson* and *Green* were decided by this court those decisions necessarily reflect "California confrontation law," a reading of the opinions in *Johnson* and *Green* clearly shows that those decisions were based on an interpretation of a number of then-recent decisions of the United States Supreme Court applying the federal confrontation clause, an interpretation that was soon disavowed by the United States Supreme Court in *California* v. *Green.* (See also *People* v. *Green, supra,* 3 Cal.3d 981, 985.) Neither *Johnson* nor *Green* purported to rely upon prior California authority in ascertaining the scope of a defendant's right to confront witnesses, and the holdings of those cases were not sufficiently long-lived realistically to sustain a contention that they themselves created protections which Californians have come to recognize as their due. (Cf., e.g., *People* v. *Pettingill* (1978) 21 Cal.3d 231, 238-241 [145 Cal.Rptr. 861, 578 P.2d 108].) Under these circumstances, we do not think that *Johnson* or *Green* can properly be viewed as accurate embodiments of the contours of the state confrontation right.

Rather than commencing our analysis of the meaning of the state confrontation clause from the *Johnson* and *Green* decisions, we view the question from a broader historical perspective. Although the current California constitutional confrontation provision dates only from 1974, a criminal defendant's right to confront witnesses has enjoyed a time-honored place in California jurisprudence from virtually the inception of our statehood. In its very first session in 1849-1850, the California Legislature enacted a provision guaranteeing a criminal defendant a number of fundamental rights, including the "right to be confronted with the witnesses against him in the presence of the Court." (Stats. 1850, ch. 119, § 11, p. 275.) This statutory protection of the right to confront witnesses has remained continuously in force in this state from 1850 to the present. (See Pen. Code, § 686, subd. 3.) Moreover, although until 1974 the confrontation right in California found explicit expression only in statutory, rather than constitutional, terms, California courts throughout our history have taken note of the "most substantial" nature of the defendant's right to confront witnesses, designating it a "right of the highest importance." (*People* v. *Plyler* (1899) 126 Cal. 379, 382 [58 P. 904]; *People* v. *Lewandowski* (1904) 143 Cal. 574, 576 [77 P. 467]; *People* v. *Hayes* (1925) 72 Cal.App. 292, 305 [237 P. 390].)[9] Indeed, even before 1974, several California courts rec-

---

[9]In *People* v. *Plyler, supra*, this court observed; "Almost every state constitution in the Union has a provision declaring that a defendant is entitled to be confronted at his trial by the witnesses against him. While our constitution has no such provision, yet

ognized that in view of its fundamental nature, a criminal defendant's right to confront witnesses—though not expressly mentioned in the state Constitution—constituted an integral element of the general "due process" guaranteed defendants by former article I, section 13 of the California Constitution. (See, e.g., *People* v. *Dozier* (1965) 236 Cal. App.2d 94, 101 [45 Cal.Rptr. 770]; *People* v. *Valdez* (1947) 82 Cal. App.2d 744, 749-750 [187 P.2d 74].)

Although the right of confrontation has thus long had a firm basis in California law we have found nothing in the lengthy history of the California confrontation safeguard which lends support to the reading of the California confrontation clause which defendant urges in the instant case. As already noted, in its initial statutory expression, the right was defined simply as entitling a criminal defendant "to be confronted with the witnesses against him in the presence of the Court;" the section did not purport to exclude the admission of out-of-court statements uttered by a witness whom the defendant did confront in the presence of the court.

In 1851, the year after the confrontation statute's initial adoption, the Legislature amended the statute to specify a number of limited circumstances in which an *absent* witness' recorded testimony could be introduced at trial without violating a defendant's confrontation rights. (Stats. 1851, ch. 29, § 11, p. 213.).[10] These statutory exceptions point up the fact that the principal focus of the California confrontation protection was to limit the receipt of testimony of *absent* witnesses, and

---

that declaration is found in the Penal Code of the state, and while there are a few statutory exceptions made to the rule there declared, still the right thus given to a defendant by the statute is deemed a most substantial one. If the practice here adopted could be allowed, then a defendant would be deprived of the right to cross-examine the witnesses against him, a right of the highest importance." (126 Cal. at p. 382.)

[10]The 1851 statute provided in relevant part: "In a criminal action the defendant is entitled:

"        .        .        .        .        .        .        .        .        .        .        .        .

"3d. To produce witnesses on his behalf, and to be confronted with the witnesses against him in the presence of the Court, except that where the charge has been preliminarily examined before a committing magistrate, and the testimony taken down by question and answer in the presence of the defendant, who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness; or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken conditionally in the like manner in the presence of the defendant, who has either in person or by counsel cross-examined, or had an opportunity to cross-examine the witness, the deposition of such witness may be read upon its being satisfactorily shown to the Court that he is dead or insane, or cannot with due diligence be found within the State."

that the section was not directed at statements of witnesses who were subject to full cross-examination at trial. Over the following century and a quarter, the statutory confrontation provisions underwent a number of revisions in which the Legislature enumerated additional circumstances under which an absent witness' testimony could be admitted at trial without violating the defendant's confrontation right. (Stats. 1911, ch. 187, § 1, p. 364; Stats. 1965, ch. 299, § 139, p. 1368.) None of these revisions, however, provide any indication that the basic right protected by the statute limited the nature of the statements that could be admitted into evidence when the declarant actually appeared and was subject to full cross-examination at trial.

Similarly, the judicial decisions interpreting the California confrontation right belie defendant's suggested interpretation. In *People v. Kiihoa* (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673], this court stated generally that "[t]he right of an accused to be confronted with witnesses is the right to have witnesses who testify do so in the presence of and subject to cross-examination by the defendant." Like the numerous federal confrontation decisions discussed in *California v. Green*, the great majority of California confrontation decisions have been concerned with the question of the admissibility of depositions and prior testimony when the declarant is not present in court. (See, e.g., *People v. Oiler* (1884) 66 Cal. 101, 103 [4 P. 1066]; *People v. Lewandowski, supra*, 143 Cal. 574; *People v. Kiihoa, supra; People v. Hayes, supra*, 72 Cal.App. 292, 301-307 and cases cited; cf. *People v. Murphy* (1963) 59 Cal.2d 818, 830-833 [31 Cal.Rptr. 306, 382 P.2d 346] (defendant's cross-examination of prosecuting witness improperly limited).) From an early date, California decisions have rejected the notion that a defendant's confrontation right is violated by the admission into evidence of a prior statement of a witness who is actually present at trial and is subject to direct confrontation and full cross-examination. (See *People v. Hawley* (1896) 111 Cal. 78, 88 [43 P. 404].)

We recognize that because of the prevailing rules of evidence, the early California decisions sanctioning the admission of out-of-court statements of appearing witnesses involved situations in which those statements were introduced for the purpose of impeaching, rehabilitating or corroborating the witness' testimony at trial, rather than for the truth of the statements themselves. (See, e.g., *People v. Hawley, supra; People v. Kynette* (1940) 15 Cal.2d 731, 753-754, 755 [104 P.2d 794]; *People v. Slobodion* (1948) 31 Cal.2d 555, 559-561 [191 P.2d 1].) None of the opinions, however, so much as suggest that the limited use

of the out-of-court statements emanated from confrontation consider-ations. In other contexts courts have made it clear that when a basic denial of the confrontation right occurs, the fact that the tainted testi-mony comes in under the sanction of a limiting instruction will not cure the confrontation violation. (See, e.g., *Bruton* v. *United States, supra,* 391 U.S. 123; *Douglas* v. *Alabama, supra,* 380 U.S. 415, 418-420 [13 L.Ed.2d 934, 937-938]; cf. *People* v. *Disbrow* (1976) 16 Cal.3d 101, 112 [127 Cal.Rptr. 360, 545 P.2d 272]. See also *Nash* v. *United States* (2d Cir. 1932) 54 F.2d 1006, 1007 (Learned Hand, J.).)

Moreover, in *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], this court, through Justice Traynor, unanimously concluded that a prior out-of-court identification by a testifying witness could be admitted and considered for the truth of the statement itself, and not simply to impeach or corroborate the in-court testimony. Al-though the *Gould* opinion did not explicitly consider the issue from the perspective of the California confrontation safeguard, Justice Traynor, in concluding that such statements could properly be considered for all purposes, observed, inter alia, that "the principal danger of admitting hearsay evidence is not present *since the witness is available at trial for cross-examination.* [Citations.]" (Italics added.) (54 Cal.2d at pp. 626-627.) (See also *People* v. *Spriggs* (1964) 60 Cal.2d 868, 875-876 [36 Cal.Rptr. 841, 389 P.2d 377].)

In sum, past California authorities applying California law provide no support for defendant's suggestion that our state constitutional con-frontation clause is violated by the introduction of an appearing witness' out-of-court statements when the defendant enjoys a full opportunity to confront and cross-examine the witness at trial.

We see no reason to depart from this traditional approach to the California right of confrontation in the instant case. Defendant asserts that his right to cross-examine the witness as to his prior statements constitutionally failed because the cross-examination did not take place contemporaneously with the witness' prior statements. Such "delay" in cross-examination, however, as the Supreme Court's opinion in *Cali-fornia* v. *Green* explained, does not necessarily impair a defendant's ability to attack the witness' prior statements, particularly when—as in this case—the witness testifies favorably to the defendant at trial. (See 399 U.S. at pp. 159-160 [26 L.Ed.2d at pp. 497-498].) Defendant re-tains the opportunity to question the declarant as to the circumstances surrounding the prior statements and to elicit from the declarant an ex-

planation for the inconsistencies in his prior statement and his on-the-stand testimony. Through such questioning, the defendant can test the credibility of the witness' statements on the witness stand before the trier of fact. In our view, the California confrontation clause requires no more.[11]

The right to confront witnesses is unquestionably a most important and fundamental right. The principal objective of this constitutional right, however, is to assure that evidence presented by the prosecution is subjected to the cleansing process of cross-examination at trial. We would extend the right of confrontation beyond its well-established meaning if we were to interpret it to preclude a jury from considering an out-of-court statement of a witness who has in fact been subjected to the powerful probe of cross-examination at trial. Accordingly, we conclude that the admission of Angel's prior inconsistent statements did not violate article I, section 15 of the California Constitution.

■ 4. *The record contains sufficient evidence to support defendant's assault convictions and the use of a firearm finding.*

Defendant further contends that his conviction should be reversed for insufficiency of the evidence. As defendant correctly points out, a line of California decisions—beginning with *People v. Gould, supra,* 54 Cal.2d 621—have established that while a witness' out-of-court identification may be admitted against a criminal defendant, such an extrajudicial identification, standing alone, is normally insufficient to sustain a criminal conviction. (See also *In re Johnny G., supra,* 25 Cal.3d 543; *People v. Belton* (1979) 23 Cal.3d 516, 535-537 [153 Cal.Rptr. 195, 591 P.2d 485] (Jefferson, J. conc.); *In re Eugene M.*

[11]To our knowledge, no state court has interpreted a comparable state constitutional confrontation provision to preclude the introduction of an out-of-court statement of a witness who testifies and is subject to full cross-examination at trial.

Moreover, while our *Johnson* opinion emphasized that at the time of that decision American jurisdictions were virtually unanimous in excluding such out-of-court statements as a matter of hearsay (see 68 Cal.2d at pp. 655-657), state court decisions in the decade since *Johnson* reveal a substantial trend favoring the admission of such evidence. (See, e.g., *Randolph v. State* (Ala. Cr. App. 1977) 348 So.2d 858, 863-867; *Beavers v. State* (Alaska 1971)) 492 P.2d 88, 91-94; *State v. Skinner* (1973) 110 Ariz. 135 [515 P.2d 880, 885-887]; *People v. Thompson* (1975) — Colo.App. — [542 P.2d 93, 95]; *Johnson v. State* (Del. 1975) 338 A.2d 124, 126-129; *Patterson v. State* (1976) 263 Ind. 55 [324 N.E.2d 482]; *State v. Nason* (Me. 1978) 383 A.2d 35, 38-39 & fn. 4; *Commonwealth v. Fitzgerald* (1978) — Mass. — [381 N.E.2d 123, 130]; *State v. Cripps* (1978) — Mont. — [582 P.2d 312, 316]; *State v. Igoe* (N.D. 1973) 206 N.W.2d 291, 293-297; *State v. Lenarchick* (1976) 74 Wis.2d 425 [247 N.W.2d 80, 87-91].)

(1976) 55 Cal.App.3d 650, 657-659 [127 Cal.Rptr. 851]. See generally Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases* (1978) 91 Harv.L.Rev. 567, 596-600; cf. Graham, *The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One* (1972) 8 Crim.L.Bull. 99, 128-130.) Defendant contends that under this line of cases, the present judgment cannot stand.

With respect to defendant's assault convictions, we think that defendant's contention clearly fails. Even without Angel's pretrial identification of defendant, the record clearly contains sufficient evidence to support the convictions. As we have discussed, numerous eyewitnesses at trial testified that after an initial exchange of gang names, shots were fired from defendant's car as it passed the parking lot where the Hazards were gathered and as it was being pursued by the police. Defendant, of course, was arrested immediately thereafter when he left the car after it crashed. This evidence, viewed in a light most favorable to the prosecution, was clearly sufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt that defendant was at least an aider and abettor in the assaults and as such was liable as a principal for the crimes. (See *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

■ Defendant's sufficiency of the evidence argument is more substantial with respect to the additional findings that defendant had *personally* used a firearm in the commission of the offenses. (See *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 306].) Angel's pretrial statements constituted the only direct evidence in support of these findings. Neither the police officers who pursued the fleeing car nor the other eyewitnesses were able to identify the shooter, and while some testimony indicated that defendant reached towards the rifle after the car had crashed, that evidence does not under the circumstances realistically shed any significant light on which occupant of the car fired the shots from the moving vehicle.

The question thus becomes whether Angel's pretrial statements are sufficient to support the firearm use findings. Defendant argues vigorously that they are not, asserting that *Gould* and its progeny establish an absolute rule that any pretrial identification which is not confirmed by the witness at trial is *never* sufficient to sustain a conviction or an enhancement finding. We cannot agree.

In *Gould*, the prosecution's case against one of the defendants, Marudas, rested solely on the fact that the victim of the burglary had picked Marudas' picture out of a group of seven photographs that she was shown by a police officer shortly after the crime. The victim testified at trial, but could not identify Marudas when she saw him in person.

In finding the victim's out-of-court identification insufficient to sustain Marudas' conviction, the *Gould* court, after initially stating broadly that "[a]n extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime" (54 Cal.2d at p. 631), went on to recognize that "the probative value of an identification depends on the circumstances under which it was made." (*Id.*) The court then enumerated the various circumstances which rendered the prior identification in that case unreliable, noting "Mrs. Fenwick [the victim] merely selected one of a small group of photographs. The small size of the group increased the danger of suggestion. [Citation.] Identification from a still photograph is substantially less reliable than identification of an individual seen in person. [Citation.] It becomes particularly suspect when, as in the present case, the witness subsequently fails to identify the subject of the photograph when seen in person and there is no other evidence tending to identify him." (*Id.*) Under these circumstances, our court concluded that the conviction could not be sustained.

Subsequent cases which have found prior inconsistent statements an insufficient basis to support a conviction have similarly involved situations in which the out-of-court statement's reliability was unsubstantiated and the record afforded no basis for concluding that the prior statement's probative value was any greater than the probative value of the witness' testimony in court. For example, in our recent *Johnny G.* decision, the alleged out-of-court statement of the victim of an assault was made at a time when the victim was concededly dazed from the attack, and was forthrightly repudiated by the victim at trial. Similarly, in *In re Eugene M.*, the court emphasized that "the circumstances surrounding [the witness'] unsworn [out-of-court] statements suggest their inherent untrustworthiness," noting, inter alia, that the statements were prompted by threats of incarceration and prosecution and were "confused and intermingled with the narrative of another crime." (55 Cal.App.3d at pp. 657-658.)

The instant case clearly differs from the foregoing decisions in a number of important respects. First, although Angel's identification of defendant to various police officers during the investigation of the crime is comparable to the identifications in *Gould, Johnny G.* and *Eugene M.* and would not in itself be sufficient to support the firearm use findings, in the case at bar the jury additionally had before it a transcription of Angel's positive identification of defendant under oath at defendant's preliminary examination. As the portion of the transcript quoted above demonstrates, Angel, though reluctant to testify at the preliminary hearing, ultimately confirmed his identification of defendant when pressed by the questioning of the municipal court judge; defendant presented no evidence that Angel's identification of him at that time had been shaken or discredited by cross-examination. This sworn testimony at a formal, judicially conducted preliminary examination clearly provides a more substantial basis for the firearm use finding than the extrajudicial identifications in *Gould, Johnny G.,* or *Eugene M.* (See *People* v. *Green, supra,* 3 Cal.3d 981, 991.)

Moreover, unlike the prior cases in which the record contained no concrete basis to credit the witness' prior identification over his trial testimony, the prosecution in the instant case presented evidence which both explained and discredited the witness' inconsistent testimony at the time of trial. As discussed above, the evidence revealed that from the outset of the investigation Angel had indicated his unwillingness to testify in court because no one had been hurt by the shooting, and on the witness stand Angel forthrightly conceded that he had told the district attorney just days before the trial that he did not want to testify because he felt that the whole matter "should be settled in the streets" rather than in court. In light of this evidence, the jury had a sound basis for discounting the witness' trial testimony and giving credence to his prior testimony against defendant.

Under these circumstances, we believe that the jury's determination that defendant had personally used a firearm must be sustained.

5. *Defense counsel's conduct at trial waived any objection as to the jury's request for clarification of an instruction.*

Defendant additionally claims that the trial court committed reversible error in failing to answer a jury request for clarification of an

instruction. The record reveals that after the jury retired to deliberate, the following colloquy took place between the court and counsel for defendant: "THE COURT:...All right. The jury does have another question relating to the jury instructions. We will ask that you bring the jury out at this time and we will answer their question so they can proceed to deliberate. [P] (Unrelated matters handled by the court.) [P] MR. COWELL [defense counsel]: Your Honor, I have spoken with the bailiff and apparently the jury told the bailiff they resolved the matter. [P] THE COURT: All right."

Shortly thereafter, the jury returned its verdict of guilt.

In light of the fact that defense counsel himself informed the court of the jury's withdrawal of its request for clarification, and did not request that the jury be brought into the courtroom for further instructions, we conclude that the defendant may not now fault the trial court for its handling of the matter. (Cf. *People* v. *Schroeder* (1979) 96 Cal.App.3d 730, 734-735 [158 Cal.Rptr. 220].)

6. *In light of In re Culbreth (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], defendant's sentence must be modified to provide for a single enhancement under section 12022.5.*

Finally, defendant contends that the trial court erred in failing to specify in the judgment that, under the circumstances of this case, only a single period of increased punishment could be imposed under section 12022.5. At the sentencing hearing, the trial court noted that all of the offenses in this case were part of "one continuous event, certainly one transaction," but in imposing sentence the court failed to indicate that only one enhancement under section 12022.5 should be imposed. The People have conceded that under *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], defendant's sentence should be modified to provide for a single enhancement under section 12022.5.

Accordingly, the judgment is modified to provide that defendant shall serve only one additional period of imprisonment pursuant to section 12022.5. As so modified, the judgment is affirmed.

Richardson, J., and Manuel, J., concurred.

**CLARK, J., Concurring and Dissenting.**—I would affirm the judgment without modification. I would hold the trial court did *not* err in "denying the request for the continued appointment of counsel without affording defendant an opportunity to explain what circumstances, if any, might warrant such continued appointment." (*Ante*, pp. 347-348) As I recently explained, I would adhere to this court's holding that "'there can be no abuse of [the trial court's] discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense.'" (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 800-801 [140 Cal.Rptr. 318, 567 P.2d 750], quoting *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930, 934-935 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984].) A fortiori, I conclude defendant was not prejudiced by the trial court's action in this regard. ▮ I concur in the opinion of the court insofar as it holds a criminal defendant's state constitutional right to confront witnesses against him is not violated by the admission of prior statements of a witness whom the defendant actually does confront and fully cross-examine at trial. Consistent with my position in *In re Culbreth* (1976) 17 Cal.3d 330, 335-336 [130 Cal.Rptr. 719, 551 P.2d 23], I would not modify the judgment.

**MOSK, J.**—I dissent. For the reasons stated in my concurring opinion in *In re Johnny G.* (1979) 25 Cal.3d 543, 549 [159 Cal.Rptr. 180, 601 P.2d 196], I would hold that the admission into evidence of the prior inconsistent statements of the witness Gregory Angel as substantive proof of guilt denied defendant his right of confrontation under article I, section 15, of the California Constitution.

As the majority concede (*ante*, p. 362), those statements constituted "the only direct evidence" to support the findings that defendant personally used the firearm involved in the three counts of assault in this case; accordingly, as to those findings the error was manifestly prejudicial. It was also prejudicial as to the verdicts finding defendant guilty of assault. Although without the prior inconsistent statements the evidence may be technically sufficient to sustain the verdicts because the jury could have found defendant to be an aider and abettor (*ibid.*), it is far more likely that the jury in fact gave great weight to those statements and found defendant to be the actual perpetrator of the crimes. In such circumstances it is probable that a judgment more favorable to defendant would have been reached in the absence of the error. (*People* v.

*Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The error thus resulted in a miscarriage of justice, and the judgment should be reversed. (Cal. Const., art. VI, § 13.)

Bird, C. J., and Newman, J., concurred.