Filed 2/25/13  P. v. Rubbock CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT RUBBOCK,<br><br>    Defendant and Appellant. | B236478<br><br>(Los Angeles County<br>Super. Ct. No. BA379265) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, George G. Lomeli, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Taylor Nguyen and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant and appellant Robert Rubbock (defendant) was convicted of counterfeit seal (Pen. Code, § 472[1]). On appeal, defendant contends, without argument, that the trial court erred in denying his motion made pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), but because the reporter's transcript of the hearing on the motion is "unavailable," we should reverse his judgment of conviction. Defendant also contends that the trial court erred in revoking his pro. per. status, denying four of his motions made pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), and denying his numerous other requests for *Marsden* hearings. We affirm the judgment.

## BACKGROUND

### A.    Factual Background[2]

Los Angeles Police Department officer Dennis Diviak testified that on December 16, 2010, while on patrol, he and his partner responded to a dispatch radio call that a male wearing a baseball cap was driving a red Dodge Charger while intoxicated. The officers saw a red Dodge Charger in a motel parking lot with the engine and brake lights on, and when they approached the vehicle they saw defendant in the driver's seat. Officer Diviak believed defendant to be intoxicated. Defendant was agitated.

Officer Diviak testified that he noticed that defendant's left hand was down by his legs, clutching an object. Defendant refused several orders by Officer Diviak to place both hands on the steering wheel. and defendant reached deeper between his legs with his left hand. Fearing that defendant was reaching for a weapon, Officer Diviak stepped back, withdrew his service revolver, and ordered defendant to show his hands. Defendant eventually brought out his hands, and in his left hand he was holding a pipe that Officer

---

[1]    All statutory citations are to the Penal Code unless otherwise noted.

[2]    Defendant does not challenge the sufficiency of the evidence in support of his conviction.

Diviak testified he believed was used to ingest rock cocaine. Officer Diviak ordered defendant out of the vehicle and handcuffed him.

Officer Diviak testified that defendant told him and his partner that defendant's friend, John Flood, rented the vehicle and loaned him the vehicle to drive. The officers conducted a search of the vehicle and found several open bottles of beer, an empty vodka bottle, and a coffee cup that appeared to contain beer.

Officer Diviak testified that when defendant was being transported to the police station, he continued to be agitated—he was screaming, cursing, and spitting during the ride. A booking search of defendant revealed a Bank of America debit card in the name of John Flood, a master card in the name of John Flood, and two driver's licenses issued by the State of North Carolina to Lawrence Davis and John Flood. Both licenses had defendant's photographs on them. Officer Diviak found this to be unusual because defendant previously told him that Flood was his friend, and that Flood had rented the vehicle and defendant was borrowing it.

Ladylyn Cordero testified that she worked at Dollar Rent-A-Car, and on December 14, 2010, she executed a vehicle rental agreement for the rental of a Dodge Charger. When processing the transaction, she noticed that the renter's driver's license did not have a visible seal, so she took the license to her manager. She obtained approval from her manager before completing the rental agreement.

Samuel Joseph Brandon testified that he worked at the North Carolina Department of Motor Vehicles as supervisor for the Certification Driver's License Help Desk. He examined the two driver's licenses obtained from the search of defendant's person, and determined that they were not issued by the North Carolina Department of Motor Vehicles and the seals on the licenses were counterfeit.

### B.     Procedural Background

The District Attorney of Los Angeles County filed an information charging defendant with two counts of counterfeit seal in violation of section 472. The District

3

Attorney alleged as to both counts that defendant had served seven prior prison terms for convictions as defined by section 667.5, subdivision (b).

Following a trial, the jury found defendant not guilty as to count 1 but found him guilty as charged in count 2. The trial court found the special allegations were true, and sentenced defendant to state prison for a term of five years.

## DISCUSSION

### A.     *Pitchess* **Motion**

On June 3, 2011, the trial court denied defendant's motion made pursuant to *Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531. Defendant contends that the trial court erred in denying the motion, but he does not provide any argument or citation to the record in support of that contention. Instead, defendant contends that, despite his numerous unsuccessful requests of the trial court to provide in the record the reporter's transcript of the June 3, 2011, hearing at which the trial court denied defendant's motion, the record that the trial court provided is inadequate for us to determine whether the trial court erred in denying the motion. According to defendant, because the reporter's transcript of the hearing on the motion is "unavailable," we should reverse, "per se," his judgment of conviction.

On April 12, 2012, we ordered that the record be augmented with the June 3, 2011, reporter's transcript. On April 24, 2012, after defendant filed his opening brief and, before he filed his reply brief, the record was so augmented. Although defendant concedes in the reply brief that the record was augmented to include the June 3, 2011, reporter's transcript, he again did not provide any argument or citation to the record in support of his contention that the trial court erred in denying the motion. And, as the Attorney General contends, although the record was augmented to include the reporter's transcript, it was part of the original record.

We therefore reject defendant's contention that we should reverse his judgment of conviction because the record is inadequate. We also do not address defendant's

4

contention that the court erred in denying his *Pitchess* motion because defendant did not provide any argument or citation to the record in support of that contention. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

### B. Revocation of Pro. Per. Status

Defendant contends that the record it provided is inadequate for us to determine whether the trial court erred in revoking his pro. per. status, and that in any event, the trial court erred in doing so. We disagree.

#### 1. Standard of Review

We review the revocation of a defendant's pro. per. status for abuse of discretion. (*People v. Welch* (1999) 20 Cal.4th 701, 735 ["The trial court possesses much discretion when it comes to terminating a defendant's right to self-representation and the exercise of that discretion 'will not be disturbed in the absence of a strong showing of clear abuse'"].)

#### 2. Applicable Law

A criminal defendant has a right to represent himself or herself at trial under the Sixth and Fourteenth Amendments to the United States Constitution. (*Faretta v. California* (1975) 422 U.S. 806, 835-836; *People v. Marshall* (1997) 15 Cal.4th 1, 20.) A trial court must allow a defendant to represent himself if he knowingly and intelligently makes an unequivocal and timely request. (*Faretta v. California*, *supra*, 422 U.S. at pp. 835-836; *People v. Valdez* (2004) 32 Cal.4th 73, 97-98.) Once granted, however, "'[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.'" (*People v. Carson* (2005) 35 Cal.4th 1, 8, quoting *Faretta v. California*, *supra*, 422 U.S. at p. 834, fn. 46.) As recognized by the court in *People v. Butler* (2009) 47 Cal.4th 814, 825, "[t]here are limits on the right to act as one's own attorney." A defendant who represents himself must be "'able and willing to abide by rules of procedure and

5

courtroom protocol.' [Citation.] This rule is obviously critical to the viable functioning of the courtroom. A constantly disruptive defendant who represents himself, and who therefore cannot be removed from the trial proceedings as a sanction against disruption, would have the capacity to bring his trial to a standstill." (*People v. Welch*, *supra*, 20 Cal.4th at p. 734.)

When determining whether termination is appropriate, the trial court should consider factors such as the nature of the misconduct, its impact on the trial proceedings, the availability and suitability of other sanctions, whether the defendant was warned that particular misconduct would result in termination, and whether the defendant intentionally sought to disrupt and delay the trial. (*People v. Carson*, *supra*, 35 Cal.4th at p. 10.) The defendant's intent to disrupt is not a "necessary condition," but is relevant to the effect of the misconduct on the trial proceedings. (*Ibid*.) "Each case must be evaluated in its own context, on its own facts . . . ." (*Ibid*.)

### 3. Background Facts

At a hearing held on June 3, 2011,[3] to address a *Pitchess* motion filed by defendant, the trial court struck defendant's challenge seeking that the trial judge, Judge Judith L. Champagne, recuse herself, as being without basis. The trial court described defendant's challenge as having been filed "under something called Rule 7.5(b) in which [defendant is] complaining that the case was assigned here after [defendant] filed an affidavit elsewhere without [his] having an opportunity to object."

At the hearing, defendant again stated that he objected to his being "in this courtroom" because he was not permitted to object before his case was reassigned to Judge Champagne. The trial court again stated that it was striking defendant's challenge because the reason for his objection to being "in this courtroom" was not a valid basis to

---

[3] The Attorney General contends that there were other prior instances, before other trial court judges, of defendant's conduct that supports the trial court's revocation of his pro. per. status. Because we conclude, as stated below, that the trial court did not err in revoking defendant's pro. per. status based upon the events of June 3, 2011, we do not reach the issue of whether the other prior instances also support the trial court's ruling.

6

grant the requested relief, and it reminded defendant that "[w]e have moved on to the next issue, which is our *Pitchess* motion, which I would like to address if we may."

Defendant objected to his being handcuffed because it caused him to have "difficulties going through [his] paperwork" in arguing why the trial court should grant his *Pitchess* motion. The trial court responded that defendant can take as much time as he needed to prepare to argue the motion.

Defendant continued to object to his being handcuffed, and the following exchange then occurred: "[Trial court:] [Defendant], I want you to just get yourself ready [to argue the *Pitchess* motion]. No talking. Just get yourself ready and then let me know when you are." [¶] [Defendant:] Okay, Your Honor, but— [¶] [Trial court:] [Defendant], what part of this do you not understand? You told me that you need the court to be patient while you get yourself organized. I am happy to do that. At the same time, you want to address other matters and you are not getting ready. [¶] Either I am going to take the matter off calendar and I am going to excuse the attorney for the City Attorney's Office, or you are going to get yourself ready so we can proceed. [¶] [Defendant:] Your Honor, may I ask to have the bailiff—these are legal documents. The court's bailiff is standing right over me perusing my legal documents, Your Honor. [¶] [Trial court:] The bailiff is standing several feet behind you because that is his job, to maintain security in the courtroom. [¶] [Defendant:] Your Honor, the bailiff— [¶] [Trial court:] I am not going to debate— [¶] [Defendant:] The bailiff is about one feet— [¶] [Trial court:] Are you ready for the motion? [¶] [Defendant:] Your Honor. I am going to request the court docket for the order. It is definitely going to be necessary for me to get an investigator to get some of these people I need in the courtroom today, Your Honor— [¶] . . . [¶] There is a matter I need to bring to the court's attention. [Mr. Freedman (defendant's investigator)] informed me he tried to see me this past week and the Sheriff's denied him the opportunity to see me and provide him with information pertaining to the status of an investigation I requested him to conduct. [¶] I am in here, Your Honor, the bailiff standing over me is about a foot away from you— [¶] [Trial court:] Actually, he is several feet behind you and he is doing his job. He is not looking

7

at your papers. . . . [¶] . . . [¶] [Defendant:] I need to get my copy of the seven— [¶] [Trial court:] If you are not ready to go forward today then mention it. [¶] [Defendant:] Your Honor, I am ready to go forward. When I first came in here, Your Honor, I informed you, you told me to let you know the things that I need. I came here the other day, Your Honor, and filed the document which you just addressed and said you would deny it on the face of it, but I don't have my copy. [¶] There are several copies in limbo that I don't have, Your Honor. [¶] [Trial court:] What if we do the *Pitchess* motion and then we will give you a date to come back and resolve the other matters you are not ready to have the court hear today. [¶] [Defendant:] Your Honor, I am ready to have the court hear all these matters. The *Pitchess* and every other matter—"

In response to the trial court's inquiry, defendant confirmed that he said that Mr. Freedman, defendant's court-appointed investigator, was not able to see him and give him the information he needed. Defendant then stated, "That is cruel and unusual punishment. For me to be in the Sheriff's custody is denying me legal visits and access to information. [¶] . . . [¶] [Defendant's contention that he should not be precluded from being provided the addresses of the witnesses he intends to call to testify at trial] is one of the reasons I am objecting to be[ing] in this courtroom. I need to reinsert my objection. I understand you don't care about pro. pers. You violate their rights. There are a lot of things I never knew about before I was brought to this courtroom. [¶] Once I realized and did my research and it is obvious everything I heard is true. You have me handcuffed here. You are trying to get me to move forward. I filed a document with Your Honor. I need my conform[ed] copy. [¶] . . . [¶] Mr. Freedman is here to attest he tried to bring me the documents. I don't know why they didn't allow him to pursue the documents."

The trial court inquired of Mr. Freedman, defendant's investigator: "Was there some problem after the court appointed you?" Mr. Freedman responded, "No. What I told the defendant is per the Sheriff's policy I cannot pass [on to him] any reports with witnesses' addresses." Mr. Freedman provided the trial court with his report with the witnesses address information redacted. Defendant objected to his receiving a redacted

8

copy of the investigator's report, and the following exchange occurred: "[Trial court:] "That will have to be the subject of another— [¶] [Defendant:] Then that motion is going to come. Let my objection be reflected on the record. [¶] [Trial court:] [Defendant, defendant,] we are going to do the *Pitchess*. You said you were ready. The attorney for the other side is here. After we have handle[d] that then we can decide when we will do the rest. [¶] Right now we are doing the *Pitchess* motion. I have given you a chance to be heard beyond what you have already stated in your moving papers."

The trial court stated that it was going to excuse Mr. Freedman, defendant's investigator, and the following exchange occurred: "[Defendant:] Your Honor, Your Honor, before we excuse Mr. Freedman, I also need to reassert my objection to the fact that Mr. Freedman actually discussed my witness information with the Sheriff. . . . [¶] [Trial court:] [Defendant], that will have to be the subject of a different matter."

In response to Mr. Freedman's inquiry, the trial court stated that it believed that if defendant's *Pitchess* motion was granted and information was ordered to be produced, that information would be produced to him because he is the one who is going to have to serve subpoenas on the witnesses to testify. The following exchange then occurred: "[Defendant:] Your Honor, Your Honor— [¶] [Trial court:] That remains for another— [¶] [Defendant:] Your Honor, objection. Let me object on the record. [¶] [Trial court:] [Defendant]— [¶] [Defendant:] Your Honor— [¶] [Trial court:] I think you are having some difficulty representing yourself. If you can't follow the court's instructions and directions, then you can't represent yourself. It is not an absolute right. You are only allowed to represent yourself when you can do so following the court's instructions, not interrupting, not making it impossible for the case to be heard. . . . [¶] [Defendant:] Is the court saying that I can't make timely objections to the court's decision pertaining to representing myself? [¶] [Trial court:] What I am saying right now we are talking about a *Pitchess* motion. [¶] [Defendant:] So I cannot— [¶] [Trial court:] Right now we are talking about a *Pitchess* motion. [¶] [Defendant:] Okay. [¶] [Trial court:] This is your opportunity to be heard on the *Pitchess* motion. [¶] . . . [¶] [Defendant:] I forwarded [the information received in response to a prior *Pitchess* motion] to Mr. Freedman.

9

Apparently Mr. Freedman is on a misguided assumption or presumption that he is suppose to take over my defense witness information.  I am suppose to assign him to whoever I choose . . . among [the witnesses on] the defense witness list . . . .  It is not the other way around. . . . .  [¶]  . . . [¶]  [Trial court:]  [Defendant], I am concerned because before you filed your challenge in the other court, you had two investigators at your own request.  Mr. Stewart, was appointed in January.  By February you asked the court to relieve him and appoint Mr. Beronni.  Mr. Berroni was appointed in February.  By March you no longer wanted him.  [¶]  At your request the court relieved him.  You asked this court to appoint Mr. Freedman.  The court appointed Mr. Freedman.  You are now on your third investigator since January.  You are again expressing dissatisfaction with his work.  [¶]  This is becoming a pattern." Defendant responded by stating that "[i]t is a pattern with the investigators doing things that are contrary to law."

The trial court advised defendant to think about whether he wants Mr. Freedman or no investigator at all.  The trial court then stated, "I am not going to rule on that today.  We are going to do the *Pitchess* motion.  If you are ready we are going to proceed.  If not we are going to take it off calendar today.  [¶]  [Defendant:]  Your Honor, I am ready, Your Honor.  Just to state this.  The court needs to admonish the investigators, You Honor.  The court has the authority to do so.  The court has the disciplinary responsibility—  [¶]  [Trial court:]  I am only going to tell you one more time.  We are going to do the *Pitchess* motion.  I don't want to talk about the shortcomings of the court investigators or any other subject.  We are going to do the *Pitchess* motion."

The trial court heard argument by defendant and the prosecutor regarding defendant's *Pitchess* motion.  Defendant argued, inter alia, that "they want to keep me in jail subjected to this type of prosecution that I am undergoing, having to defend myself in handcuffs with a bailiff standing behind me overlooking my paperwork . . . ."  The trial court advised defendant, "You are getting out of the range of the *Pitchess*.  If you could try to stay focused on the *Pitchess* motion, I will give you another couple of minutes to conclude."  Defendant continued his argument stating, inter alia, that, "I see [that the

Sheriff's Department destroys video tapes showing their excessive use of force] because the court supports them." Ultimately, the trial court denied the *Pitchess* motion.

The trial court informed defendant that a hearing on his motion to suppress was scheduled for June 17, 2011. Defendant stated that he anticipated that he would not be ready to have his motion heard by that date, and admitted that he did not have a written motion to continue the hearing. The trial court stated that the hearing will be on June 17, 2011, as originally calendared, and that the matter will be taken off calendar if the parties were not ready to proceed. The following exchange occurred: "[Defendant:] Your Honor, for the record— [¶] [Trial court:] For the moment we are finished. [¶] [Defendant:] Your Honor, I don't have a copy of the motion. You told me to bring a list. Everytime I come in here—now I have two deputies advancing on me, Your Honor— [¶] [Trial court:] Actually, they are standing completely still. They are present because it is time for you to go with the deputies. [¶] [Defendant:] Your Honor, I am not going to get a copy of my motion that I filed in the past? I don't have anything on the record for everything that I have done in my case. This has been going on for the past two months. [¶] [Trial court:] I have only known you for a couple of weeks, sir. I can't speak to matters that occurred months ago. We have the allotted time allowed, utilized the allotted time for today. We have gone on at length. Go with my deputies. [¶] [Defendant:] Your Honor, I am going to leave, but I am going to— [¶] [Trial court:] "At this point the court finds you are not capable of following the court's orders and instructions, and I am going to revoke your pro per status and ask that your stand by counsel take over." The trial court appointed counsel to represent defendant.

### 4. *Analysis*

Defendant contends that the trial court erred in revoking his pro. per. status. As he did with regard to his contention that the trial court erred in denying his *Pitchess* motion, defendant contends in his opening brief that we should reverse his judgment of conviction, "per se," because despite his repeated requests, the record that the trial court provided did not contain the reporter's transcript of the June 3, 2011, hearing at which the

11

trial court revoked his pro. per. status. But, as noted above, the June 3, 2011, transcript was part of the original record.

In addition, the trial court did not abuse its discretion in revoking defendant's pro. per. status. The trial court could reasonably conclude that defendant failed to follow its repeated instructions to focus on and present oral argument in support of the *Pitchess* motion. Despite the trial court having denied defendant's challenge to the matter being assigned to Judge Champagne, defendant thereafter continued to object to that assignment. Although the trial court ruled that defendant was to remain handcuffed during the hearing, defendant thereafter repeatedly objected to his being handcuffed. Instead of arguing the merits of his *Pitchess* motion, defendant repeatedly objected to the proximity of the bailiff to him, accused the trial court that it did not "care about pro. pers." and that it "violate[s] their rights," contended that the Sheriff's Department denied him access to information for which he was entitled (contradicted by Mr. Freedman, defendant's own investigator), and accused his third court-appointed investigator of improper conduct. Defendant also failed to follow the trial court's instructions at the conclusion of the hearing to leave with the deputies.

Under these circumstances, the trial court could reasonably conclude that defendant "'deliberately engage[d] in serious and obstructionist misconduct.' ([*People v.*] *Faretta*, *supra*, 422 U.S. at pp. 834-835, fn. 46 [95 S.Ct. at p. 2541.)" (*People v. Welch*, *supra*, 20 Cal.4th at p. 734.) The trial court is in the best position to determine whether a defendant should be granted in propria persona status or allowed to continue acting in propria persona (*People v. Welch*, *supra*, at p. 735), and we recognize that "the extent of a defendant's disruptive behavior may not be fully evident from the cold record." (*Ibid*.)

The trial court reasonably could conclude that defendant frustrated the trial court's efficiency and abused the dignity of the courtroom. The trial court had sufficient justification for determining that just as certain conduct would not be tolerated from a member of the bar, it need not be tolerated from a lay person acting in propria persona. (*People v. Carson*, *supra*, 35 Cal.4th at p. 9 ["'A defendant acting as his own attorney has

12

no greater privileges than any member of the bar'"].)  In view of defendant's conduct, it cannot be said that the trial court abused its discretion in terminating defendant's in propria persona status.  (*Faretta v. California*, *supra*, 422 U.S. at pp. 834-835, fn. 46; *People v. Welch*, *supra*, 20 Cal.4th at p. 735; see *People v. Clark* (1992) 3 Cal.4th 41, 116.)

### C.    **Denial of *Marsden* Motions**

Defendant contends that the trial court abused its discretion in denying his four motions made pursuant to *People v. Marsden*, *supra*, 2 Cal.3d 118.  We disagree, but even if the trial court erred, the error was harmless.

#### 1.    *Standard of Review*

"We review the denial of a *Marsden* motion for abuse of discretion.  (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085 [74 Cal.Rptr.2d 121, 954 P.2d 384].)  Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.'  (*People v. Smith* [(2003)] 30 Cal.4th [581,] 604.)"  (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)  We review the trial court's erroneous denial for prejudice under the *Chapman* standard.  (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*); *People v. Marsden*, *supra*, 2 Cal.3d at p. 126.)

#### 2.    *Applicable Law*

A defendant who believes that his appointed counsel is providing ineffective assistance may seek to have that counsel relieved and substitute counsel appointed through "what is commonly called a *Marsden* motion."  (*People v. Smith*, *supra*, 30 Cal.4th at p. 604.)  "A defendant must make a sufficient showing that denial of substitution would substantially impair his constitutional right to the assistance of counsel (*People v. Smith* (1985) 38 Cal.3d 945, 956 [216 Cal.Rptr. 98, 702 P.2d 180]), whether because of his attorney's incompetence or lack of diligence (*In re Banks* (1971) 4 Cal.3d

13

337, 342 [93 Cal.Rptr. 591, 482 P.2d 215]; *People v. Crandell* (1988) 46 Cal.3d 833, 854 [251 Cal.Rptr. 227, 760 P.2d 423]), or because of an irreconcilable conflict (*People v. Stankewitz* (1982) 32 Cal.3d 80, 93-94 [184 Cal.Rptr. 611, 648 P.2d 578, 23 A.L.R.4th 476]; *Brown v. Craven* (9th Cir. 1970) 424 F.2d 1166, 1170).  We require such proof because a defendant's right to appointed counsel does not include the right to demand appointment of more than one counsel, and because the matter is generally within the discretion of the trial court.  (*People v. Marsden*, *supra*, 2 Cal.3d at p. 123.)"  (*People v. Ortiz* (1990) 51 Cal.3d 975, 980, fn.1.)  "We do not find *Marsden* error where complaints of counsel's inadequacy involve tactical disagreements.  [Citations.]"  (*People v. Dickey* (2005) 35 Cal.4th 884, 922.)

### 3.      Background Facts

On June 3, 2011, the trial court revoked defendant's pro. per. status and appointed Elliott Tiomkin as defendant's counsel.

#### a.      First *Marsden* Hearing

On August 11, 2011, defendant requested a *Marsden* hearing.  The trial court addressed defendant's motion outside the presence of the prosecutor (first *Marsden* hearing).  Defendant contended that Mr. Tiomkin was not properly representing him. Defendant stated, inter alia, that Mr. Tiomkin had not visited or contacted him, had not discussed the case with him, failed to communicate with the trial court and the Commission on Judicial Performance about defendant's complaint against Judge Champagne, provide defendant with the minute orders of the proceedings, acknowledge defendant's concerns about being handcuffed in the courtroom and the hostile treatment he received in the courtroom, acknowledge the verbal and physical abuse that defendant encountered in court "lockup," provide documents requested by defendant, and discuss with defendant how he intended to represent him and whether he investigated potential witnesses.

14

In response, Mr. Tiomkin stated, "I was appointed on June 3rd. At that point, I received discovery from the People. Defendant wouldn't provide me with any discovery that he had up to that point. I went ahead and spoke with the investigator in this case, Robert Freedman. Mr. Freedman advised me that he had located one *Pitchess* witness. She was in North Carolina and was not willing to come to this court. And to date, I have—Mr. Freedman has not located any other *Pitchess* witness. [¶] With respect to—I reviewed the discovery. I spoke with the D.A. in this matter, requested additional documents that were contained in her file, namely dispatch in CLETS, CLETS, logs, and tapes, as well as some surveillance videos pertaining to the defendant's arrest recordings. And the D.A. indicated that she would provide that information to me. I have not yet received—I reviewed the paper material. I have not yet received the electronic versions. And this morning I was prepared to run a 1538.5 motion on defendant's behalf. I didn't file the motion, he filed the motion; however, in reviewing the discovery, it's evident to me there is a 1538.5 issue. I learned this morning that the witness that the defendant was referring to was brought in from state prison, and I have not yet had the opportunity to speak to that witness because the witness was in state prison until today. But it's my intention to speak to the witness and give the D.A., at her request, indicated testimony that would be able to be rebuttal testimony after the officer testified. [¶] As far as speaking with the defendant, I've spoken to the defendant numerous times when he was pro per. On June 3rd after the defendant's pro per status was revoked by Judge Champagne, I attempted to speak to the defendant concerning my representation, and the defendant indicated he did not accept me as his attorney. He believed he was still pro per. And he was rightfully entitled to be pro per. He refused to cooperate in my representation of the defendant, refused to give me any sort of facts, discuss strategy, discuss the case at all. The only thing that the defendant told me was that he requested a list of documents from the court. Those documents pertained to two issues: Issue number one, he wanted to writ the issue of being denied pro per. status. Issue two, he filed a complaint against Judge Champagne with the Committee on Judicial Performance. He had a letter from the Committee on Judicial Performance with respect to documents

15

that they were requesting from the court. I provided Judge Champagne on June 3rd with the information from the Committee on Judicial Performance. I also provided her with the request for documents, and there were transcripts he was requesting. I actually have the handwritten letter from the defendant if the court wants to see that. But there is about 10 transcripts, 10 minute orders, and a variety of motions that he filed, those are documents that he was requesting. Again, for the Committee on Judicial Performance and his writ. [¶] The defendant also requested additional time to run the writ. And I asked him how much time he needed, he said, 'as much time as possible.' He agreed to put the matter over to July 25th so he could run the writ. At that point the defendant refused to talk to me about the case, refused to communicate any further with me about the case. We continued the case to July 25th. [¶] As I indicated on July 25th, I was ill and I did request to have another ICDA attorney stand in for me and trail the case without a time waiver because I didn't know what the defendant wanted to do, if he wanted to give a time waiver or not, but trail it to this date. And I spoke with the D.A. last night, indicated that we would proceed on the 1538.5 this morning, and they indicated that the officer should be present, I indicated yes, the officer should be present, we would be prepared to proceed. I prepared for that motion, and I'm ready to proceed on that this morning. [¶] I believe the problem in this case is not so much—or not at all my representation of the defendant but rather the defendant's desire to represent himself and he's using the *Marsden* issue as a means by which he can speak to the court because he wants to represent himself. But he certainly is not cooperating with my representation of him. So the issue is not my unwillingness to speak to him, the issue is his unwillingness to speak to me."

After hearing further from defendant and Mr. Tiomkin, the trial court denied defendant's motion, stating, "[t]o the extent there are conflicts in the statements of the defendant and his attorney made during this hearing, I find counsel to be credible, and I do believe counsel regarding the defendant's refusal to speak with him other than that to make a few demand which the attorney attempted to follow, that being requests for documents from the court and other issues described by the defendant including finding

16

*Pitchess* witnesses, attempting to get a stay, continuing the matter. [¶] And I disbelief [*sic*] the defendant for the following reasons: I do believe that the defendant has not fully and completely integrated and spoken or fully and completely consulted with his attorney in this matter because he refused to do so. At one point the defendant stated that he had not totally and completely shut down on his attorney. That's not really the standard as to whether or not he's willing to speak or continue to cooperate with him. The court finds that—the court believes the attorney and disbelieves the defendant in that matter. It appears to the court that what the defendant is doing and clearly what was essentially a very quick *Marsden* request once he lost his pro per. status is to reassert himself in pro per. [¶] I do find that not only is counsel credible but he does appear on top of all the issues, to the court. He has done substantial work on the case including some work that the defendant had requested he do as well as proceed with this motion which the defendant would be prepared to proceed with this motion including having a witness available to testify based upon a motion that the defendant filed while he was pro per. [¶] I also find it difficult—part of my evaluation of credibility has to do with the defendant saying that the attorney refused to speak with him, but then later say that he had spoken to him and that he had gotten at least some status regarding the request for documents. I do find that any deterioration—although I'm not sure that that's the word I think we probably started out with here—in the relationship has been caused by the defendant's attitude, and there is no reason to believe the defendant cannot be represented effectively by this attorney. [¶] Moreover, there is no reason to believe, based upon my observation and the statements of the defendant that the defendant would get along any better with any other attorney that I might appoint."

b.      Second *Marsden* Hearing

On August 15, 2011, two court days after defendant's first *Marsden* hearing, defendant requested another *Marsden* hearing seeking to discharge his counsel, which the trial court granted (second *Marsden* hearing). At the *Marsden* hearing, defendant stated that Mr. Tiomkin failed to call a witness that was necessary for defendant's suppression

17

hearing. According to defendant, the witness would testify as to whether defendant consented to the search of his vehicle. Mr. Tiomkin stated that, "I indicated to [defendant] that the issues were going to be dealt with here are issues concerning whether this was a detention or a consensual encounter. Maybe that's—he's misunderstood the word consensual encounter, [and] believe[s] it to mean consent [to search defendant' vehicle]. There was no issue as to consent. The D.A. never indicated to me that this— she was going to argue anything about consent. I believe [defendant] misunderstood that issue. [¶] I spoke with the witness at length. I spoke with the defendant last time we were here concerning this witness. And defendant actually agreed with me that he didn't want to call that witness because it wasn't necessary. . . . [¶] And I'm making a strategic decision not to call that witness." The trial court denied defendant's *Marsden* motion, stating, "I don't find there's been a breakdown in the relationship between the attorney and the defendant at this time that would make it impossible for the attorney to properly represent the defendant. I'm finding, as I did before, any deterioration in the relationship at this stage is that the defendant wish[es] to be pro per, and there is no reason why in the future the defendant would not be adequately represented by this attorney."

### c. Third *Marsden* Hearing

On August 22, 2011, immediately prior to the commencement of trial, defendant requested another *Marsden* hearing, which the trial court granted (third *Marsden* hearing). At the *Marsden* hearing, defendant stated that Mr. Tiomkin failed to seek sanctions for the destruction of a video tape from the police station, introduce at the suppression hearing certain evidence, question the arresting officer at the suppression hearing what he wore on the day of defendant's arrest, and view the video evidence concerning this case. Mr. Tiomkin stated that defendant had refused to talk to him about the case and had not cooperated with him in formulating a defense. Mr. Tiomkin also stated that he never had any communication with defendant about seeking sanctions for

18

destruction of evidence, and that he had reviewed the file and discovery, spoken to defendant's investigator, and was ready to proceed with trial.

The trial court denied the motion, stating that the introduction of evidence and calling witnesses to testify were tactical matters. Defendant disagreed, stating, "I believe the better tactic would have been to impeach this officer with the video that pertains to what he was doing."

### d.     Fourth *Marsden* Hearing

On September 26, 2011, following defendant's conviction, defendant requested another *Marsden* hearing, which the trial court granted (fourth *Marsden* hearing). At the *Marsden* hearing, defendant stated that a "couple of times [Mr. Tiomkin] promised or assured me that he was going to provide to me a copy of CALCRIM 1926" and he never provided it to me. The trial court denied the *Marsden* motion stating, "[T]hat . . . is not a basis for a *Marsden*. That . . . is a courtesy by your attorney to furnish you that."

### 4.     *Analysis*

Defendant's failed to establish that the trial court abused its discretion in denying his motions made pursuant to *People v. Marsden, supra,* 2 Cal.3d 118. Defendant's complaints in support of removing Mr. Tiomkin as his counsel under *Marsden* included concerns regarding matters of courtesy and tactical disagreements he had with Mr. Tiomkin. Such matters do not indicate a conflict that required Mr. Tiomkin be removed as defendant's counsel. "'Tactical disagreements between the defendant and his attorney do not by themselves constitute an "irreconcilable conflict." ". . . [C]ounsel is 'captain of the ship' and can make all but a few fundamental decisions for the defendant." [Citation.]' (*People v. Welch*, *supra*, 20 Cal.4th at pp. 728-729 [85 Cal.Rptr.2d 203, 976 P.2d 754]; see *People v. Nakahara* (2003) 30 Cal.4th 705, 719 [134 Cal.Rptr.2d 223, 68 P.3d 1190].)" (*People v. Jackson* (2009) 45 Cal.4th 662, 688; see *People v. Valdez*, *supra*, 32 Cal.4th at p. 95; *People v. Lucky* (1988) 45 Cal.3d 259, 281-282.)

19

In addition, many of defendant's complaints in support of his request under *People v. Marsden, supra,* 2 Cal.3d 118, to have Mr. Tiomkin removed as his counsel were contradicted by Mr. Tiomkin.  "'To the extent there was a credibility question between defendant and counsel at the hearing, the court was "entitled to accept counsel's explanation." [Citation.]' [Citation.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1245.) The trial court could have reasonably concluded that it believed Mr. Tiomkin and disbelieved defendant.  Indeed, the trial court expressly stated during the first *Marsden* hearing that, "[t]o the extent there are conflicts in the statements of the defendant and his attorney made during the [*sic*] this hearing, I find counsel to be credible" and "I disbelief [*sic*] the defendant."  The trial court also stated during the first *Marsden* hearing, "what the defendant [was] doing [was] clearly [making] what was essentially a very quick *Marsden* request once he lost his pro per. status . . . to reassert himself in [as] pro per."

The trial court, in its discretion, could discount the extent to which defendant established during the *Marsden* hearings that there allegedly was a breakdown in communication between him and Mr. Tiomkin.  For example, during the second *Marsden* hearing, to the extent defendant misunderstood Mr. Tiomkin's use of the phrase "consensual encounter" in the context of whether there was a detention to mean "consent to search defendant's vehicle," there is no evidence that Mr. Tiomkin knew at the time he spoke to defendant that defendant did not understand the distinction.  In any event, this does not justify Mr. Tiomkin's removal as counsel for defendant.

Defendant also contends that the fourth *Marsden* hearing established that there was "a serious breakdown in communication between himself and defense counsel [because] defense counsel did not give [him] a copy of [a] proposed jury instruction[—CALCRIM 1926]."  This is not "a serious breakdown in communication," nor does it justify Mr. Tiomkin being removed as counsel for defendant.

The trial court provided defendant with four opportunities to explain his dissatisfaction with his counsel.  Defendant did not, however, establish that the trial court abused its discretion in not removing Mr. Tiomkin as counsel under *People v. Marsden, supra,* 2 Cal.3d 118.

Even if the trial court erred in denying one or more of defendant's *Marsden* motions, defendant failed to establish that he was prejudiced under the *Chapman* standard. (*Chapman v. California*, *supra*, 386 U.S. at p. 24; *People v. Marsden*, *supra*, 2 Cal.3d at p. 126.) As the trial court noted during the first *Marsden* hearing, counsel was "on top of all the issues," and "ha[d] done substantial work on the case including some work that [defendant] requested he do." Indeed, defendant's counsel was successful in obtaining an acquittal on count one. Any error by the trial court in denying defendant's *Marsden* motions was harmless beyond a reasonable doubt.

**D.  *Marsden* Hearings on Each of Defendant's Multiple Requests**

Defendant contends that the trial court erred in denying his numerous requests for a *Marsden* hearing and violated his right to counsel. We disagree, but even if the trial court erred, the error was harmless.

*1.  Background Facts*

In addition to defendant's four requests for *Marsden* hearings that were granted by the trial court, discussed above, defendant made several requests for *Marsden* hearings for which the trial court did not grant a hearing.

On August 12, 2011, defendant requested *Marsden* hearing. The following exchange occurred: "[Defendant:] Your Honor, I request a *Marsden* hearing. [¶] [Trial court:] You had a *Marsden* hearing yesterday, sir. [¶] [Defendant:] Yes, I had a discussion with [Mr. Tiomkin] yesterday and we discussed several things. I have right now a declaration written by the witness in the case, Your Honor, that [Tiomkin] told him yesterday about when he first found out that the witness was here. [¶] [Trial court:] Sir, we went through this yesterday. [¶] [Defendant:] No, Your Honor— [¶] [Trial court:] The request for further *Marsden* is denied at this point."

On August 23, 2011, during defendant's cross-examination at trial of Officer Diviak, defendant objected in open court to Mr. Tiomkin's use of defendant's photographs because Mr. Tiomkin had not made copies of them and returned the

21

originals to defendant. The trial court dismissed the jury, and the following exchange occurred: "[Defendant:] Your Honor, I asked for a *Marsden* hearing. [¶] [Trial court:] You had a *Marsden* hearing [yesterday]. [¶] [Defendant:] Well, Your Honor, when [Mr. Tiomkin] takes photographs from me and I have an agreement with him, Your Honor, I'm not going to let this man strip me of my—this court has already stripped me of my right to represent myself unjudiciously [*sic*], okay, and they've given it to an attorney and—Your Honor, let me make my record. [¶] They've given me an attorney. I'm not irrational. Your Honor, this officer, they make—I wanted the whole thing played. They selectively played that stuff." The trial court told defendant that Mr. Tiomkin may have chosen not to play the video in its entirety for tactical reasons, and that the photographs will be returned to defendant after Mr. Tiomkin has made copies of them.

On August 24, 2011, the trial court asked Mr. Tiomkin whether defendant was going to testify, and Mr. Tiomkin responded that "we have an issue." At that point, defendant requested another *Marsden* hearing, and Mr. Tiomkin stated that defendant advised him that he wants to call an officer back to testify that defendant was on parole, and that Mr. Tiomkin explained to defendant that the officer could not testify to that because he was not a parole officer. The following exchange occurred, "[Defendant:] Your Honor, I request a *Marsden*. This is an issue whereby the officer was going to—  [¶] [Trial court:] Again, sir, you are bringing up something where you are disagreeing with the tactics and strategy your attorney has taken. [¶] [Defendant:] I am an intense client, Your Honor. And when you are on parole you give a fake I.D. to avoid being known or being on parole. [¶] [Trial court:] You had a choice. He can't get up there and testify. [Defendant:] Your Honor, that's not the only—  [¶] [Trial court:] The officer did not testify to that. . . . It would be hearsay that you were on parole." Defendant stated that the officer could be cross-examined by Mr. Tiomkin because the arrest report contained defendant's fingerprints and the fingerprints would show that defendant was on parole at the time of his arrest. The trial court responded that, "The only one that would know [that] would be your parole officer . . . ."

22

Defendant also stated that Mr. Tiomkin failed to watch a video that was partially presented as evidence at trial. Mr. Tiomkin responded that he heard the audio portion of the video but was unable to open the visual portion of it. The following exchange occurred between defendant and the trial court: "[Defendant:] Your Honor, before [the jury] come[s] in, I had said several times, Your Honor, that [Mr. Tiomkin] did not want to introduce— [¶] [Trial court:] Again, sir—hold on. I've been very patient with you these past days during this trial. Every time we recess, every time before I bring the jury in you have something to say. [¶] I've advised you. You are not pro per in this case. You may disagree with your attorney in terms of tactics and strategy. You can appeal the ineffective[ness] of counsel [if you are convicted]. [¶] I'm not going to entertain everything you have to say each and every time. Understand, every judge you've been in front of, you've done that. And I'm not going to tolerate it. I've been very patient with you."

On August 25, 2011, defendant requested another *Marsden* hearing. The following exchange occurred: "[Defendant:] Excuse me, Your Honor. I've already indicated to the court I need a *Marsden*. [¶] [Trial court:] Okay. You'll have one after the trial is terminated . . . [defendant]. . . . [¶] . . . [¶] You appear to be bringing up [that] you disagree with the tactics that your attorney has undertaken, you disagree that he should have done something or didn't do something, he's failing to ask certain questions, fail to call certain witnesses, failing to follow your advice and instructions about how this case should be conducted. That's not the basis for a *Marsden*, so your *Marsden* is denied. . . . [¶] . . . [¶] [Defendant:] Ineffective representation is a conflict. [¶] . . . [¶] [T]his is an ongoing thing. [¶] . . . [¶] I need to be specific about it. [¶] . . . [¶] I am charged with a 472. He's not made any moves to communicate that I'm being prosecuted as if this is a 470(b). [¶] [Trial court:] All right sir. Noted for the record. [¶] [Defendant:] I'm not charged with a driver's license, I'm charged with possession of a— [¶] [Trial court:] Very good. You can bring that up on appeal. We're bringing the jury in."

23

On August 26, 2011, before the trial court read the jury instructions to the jury, defendant requested another *Marsden* hearing. The following exchange occurred, "Your Honor, I want to use the opportunity to request a *Marsden*, that I know is going to be denied . . . [¶] . . . [¶] May I get the *Marsden* hearing, Your Honor? [¶] [Trial court:] Your *Marsden* hearing is based on the fact, and it has been for the past four times that you've brought it lately, that you disagree with the tactics of your attorney and the strategy that he's undertaken. [¶] . . . [¶] [Y]ou're basically disagreeing with what he's doing. That is a disagreement of strategy and tactics and does not lend itself to *Marsden*."

## 2. Analysis

We review the denial of a request for a *Marsden* hearing for abuse of discretion. (*People v. Chavez* (1980) 26 Cal.3d 334, 347-348.) Although defendant contends that the trial court's failure to hold a *Marsden* hearing is reversible per se, he is incorrect. In support of defendant's contention, he cites *People v. Rivers* (1993) 20 Cal.App.4th 1040, at page 1050, as stating, "It is true that it is routinely held that any substantial impairment of the right to counsel is reversible per se." The court in *Rivers*, however, specifically stated, "We . . . do not decide whether an erroneous refusal to consider a *Marsden* motion in the circumstances presented by this case would be reviewable under the 'harmless error' standard." (*People v. Rivers*, *supra*, 20 Cal.App.4th at p. 1051.) Plaintiff also cites *People v. Sanchez* (2011) 53 Cal.4th 80, 89-90, and *People v. Hill* (1983) 148 Cal.App.3d 744, but they do not hold that a trial court's failure to hold a *Marsden* hearing is reversible per se.

Our Supreme Court stated in *People v. Chavez*, *supra*, 26 Cal.3d 334, "[W]e conclude that the trial court abused its discretion in denying the request for the continued appointment of counsel without affording defendant an opportunity to explain what circumstances, if any, might warrant such continued appointment. [¶] Having decided that the court abused its discretion in this regard, we must determine whether that error warrants reversal of defendant's conviction. For a number of reasons we have concluded

24

that, on the present record, the error was not prejudicial. . . . [¶] . . . [¶] Defendant maintains, however, that a 'per se' rule of reversible error should be applied in this case, arguing that such a rule was adopted by this court in *Marsden* and its progeny. [Citations.] Defendant is in error in suggesting that *Marsden* enunciated a per se reversible error test; the decision makes clear that the court reversed the conviction in that case because [although the trial court erred because defendant was denied the opportunity to explain the basis for his request for the appointment of new counsel] the court concluded that it could not find beyond a reasonable doubt that the error did not contribute to the defendant's conviction. [Citation.]" (*People v. Chavez*, *supra*, 26 Cal.3d at pp. 347-349.)

The trial court did not abuse its discretion in denying defendant's numerous requests for *Marsden* hearings that were in addition to defendant's four requests for which *Marsden* hearings were held. Based on the totality of the circumstances, the trial court could reasonably conclude that defendant in making multiple requests for *Marsden* hearings was engaged in gamesmanship for the purpose of delay or attempting to otherwise disrupt and control the proceedings. "'[A]ny dispassionate reading of this record reflects that this defendant was playing games with the court on this issue.' [Citation.]" (*People v. Clark*, *supra*, 3 Cal.4th at p. 96.) "'Trial courts are not required to engage in game playing with cunning defendants who would present Hobson's choices.'" (*People v. Clark*, *supra*, 3 Cal.4th at p. 115, citing *People v. Davis* (1987) 189 Cal.App.3d 1177, 1187, overruled on other grounds as stated in *People v. Snow* (1987) 44 Cal.3d 216, 225-226.)

On the occasions that defendant was denied his requests for *Marsden* hearings, he arguably was deprived of the ability to fully state the reasons that he believed entitled him to new counsel. In view of the trial court's determinations of defendant's failure to state adequately his reasons for the appointment of new counsel during the four occasions he was afforded a *Marsden* hearing and of his failure to articulate the basis specified by *People v. Marsden, supra,* 2 Cal.3d 118 and the related cases for the appointment of new

counsel, the reasons defendant provided the trial court for his other requests for *Marsden* hearings did not obligate the trial court to halt the proceedings to hold the hearings.

Defendant's August 12, 2011, request for a *Marsden* hearing was based on his contention that he had new evidence in the form of a witness declaration providing "that [Mr. Tiomkin] told him yesterday about when he first found out that the witness was here." Defendant contends that this "shows that defense counsel had not investigated the case, and had not properly communicated with [defendant]." These were matters, however, that were the subject of the *Marsden* hearing conducted the day before, on August 11, 2011. "[A] defendant is not entitled to keep repeating and renewing complaints that the court has already heard. [Citation.]" (*People v. Vera* (2004) 122 Cal.App.4th 970, 980.)

Defendant's August 23, 2011, request for a *Marsden* hearing was based on his complaint that Mr. Tiomkin used defendant's original photographs at trial and did not first make copies of them and return the originals to defendant, and a video was not played in its entirety at the trial. Plaintiff's complaints do not establish that his constitutional right to the assistance of counsel was impaired substantially. The trial court told defendant that that the photographs will be returned to him after Mr. Tiomkin has made copies of them. Mr. Tiomkin's choice not to play the video in its entirety was a tactical decision.

Defendant contends that the trial court abused its discretion in denying defendant's August 24, 2011, request for a *Marsden* hearing because Mr. Tiomkin failed to explain properly to defendant the limitations on Officer Diviak's ability to testify about matters relating to defendant's parole status at the time of his arrest. Mr. Tiomkin, however, explained that defendant advised him that defendant wanted to call an officer back to testify that defendant was on parole, and Mr. Tiomkin explained to defendant that the officer could not testify as to that issue because he was not a parole officer. The trial court could reasonably conclude that Mr. Tiomkin, and not defendant, was credible.

Defendant's August 25, 2011, request for a *Marsden* hearing was based on his complaint that he was charged with a violating section 472, but Mr. Tiomkin had "not

26

made any moves to communicate that I'm being prosecuted as if [defendant violated section] 470(b).[4]" As the proceedings occurred before the trial court, it undoubtedly knew whether there was merit to defendant's claim that he was being prosecuted as if he was charged with violating section 470, subdivision (b) instead of section 472. Defendant's conviction for violating section 472 contradicts his claim, and he does not challenge his conviction for not being supported by substantial evidence.

On August 26, 2011, defendant requested another *Marsden* hearing, but did not state any basis for seeking to remove Mr. Tiomkin as his counsel. The trial court denied defendant's request stating that his request in based on a disagreement he had with Mr. Tiomkin's strategy and tactics and that "does not lend itself to [the granting of a] *Marsden* [motion]." Defendant did not state that he disagreed with this characterization.

Moreover, for the reasons stated above regarding the trial court's denial of defendant's *Marsden* motions, even if the trial court erred in denying defendant's multiple requests for *Marsden* hearings, defendant has failed to establish that he was prejudiced by that error. In addition, defendant has made no showing here that any of his *Marsden* motions would have been granted had it been heard, or that a more favorable result would have been achieved had any of the motions in fact been granted. (*People v. Washington* (1994) 27 Cal.App.4th 940, 944.)

Based on the applicable standard of review, abuse of discretion, which we must follow, we affirm the conviction.

---

4    Section 470, subdivision (b) provides, "Every person who, with the intent to defraud, counterfeits of forges the seal or handwriting of another is guilty of forgery."

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


ARMSTRONG, Acting P. J.


KRIEGLER, J.

28